ORIGINAL

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FILED

APR 07 2008 EA

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC. | § § § | Civil Case No. 08-C-945 |
| | § | 08-C-945 |
| Plaintiff/Appellee, | § § | Hon. David H. Coar |
| v. | § § | |
| BARON & BUDD and JOHN HENRY PACE, | § § § | *[Transmitted on 2/14/08 from the United States Bankruptcy Court for the Northern District of Illinois, Case No. 07-A-00576]* |
| Defendants/Appellants | § | |

---

## NOTICE OF FILING

---

To:     See attached Service List.

        PLEASE TAKE NOTICE that on the **7th day of April, 2008,** we filed with the United

States District Court for the Northern District of Illinois, at 219 South Dearborn Street, Chicago,

Illinois, the following document via Federal Express-Next Day courier:

### BRIEF OF THE APPELLANTS

1

Dated:  April 4, 2008.

Respectfully submitted,

BRENT M. ROSENTHAL, Esq. *[pro hac vice]*
Texas State Bar No. 17281075
BARON & BUDD, P.C.
The Centrum Building
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas  75219-4281
Telephone No.: 214-521-3605
Facsimile No.: 214/520-1181

BY: _____
 BRENT M. ROSENTHAL
 *Lead Counsel for Defendants/Appellants*

*~ and ~*

Marc Chalfen, Esq. (ARDC No. 00422584)
David Adduce, Esq. (ARDC No. 6203603)
James Stephenson, Esq. (ARDC No. 6287477)
KELLY, OLSON, MICHOD, DEHAAN
 & RICHTER, L.L.C.
30 S. Wacker Drive, #2300
Chicago, Illinois  60606
Telephone No.: 312-236-6700
Facsimile No.: 312-236-6706
*Local Counsel for Defendants/Appellants*

2

## CERTIFICATE OF SERVICE

The undersigned, after being duly sworn, deposes and says that, on the 4th day of April,

2008, he served the attached **"Brief of the Appellants"** and this **"Notice of Filing"** via Federal

Express, Next Business Day Service, to all known counsel of record, as indicated on the attached

Service List.

BRENT M. ROSENTHAL
*(pro hac vice)*

3

## SERVICE LIST

Honorable David H. Coar
UNITED STATES DISTRICT COURT
Northern District of Illinois
219 South Dearborn St., Rm. 1478
Chicago, IL 60604
Phone: 312- 435-5648

Clausen Miller, Esq.
Colleen Brown, Esq.
John F. O'Brien III, Esq.
CLAUSEN MILLER, P.C.
10 South LaSalle Street
Chicago, IL 60603-1098
Phone: 312-855-1010

Michael S. Davis, Esq.
ZEICHNER ELLMAN & KRAUSE, LLP
575 Lexington Avenue
New York, NY 10022
Phone: 212-223-0400
Fax: 212-753-0396

Marc Chalfen, Esq.
David Adduce, Esq.
James Stephenson, Esq.
KELLY, OLSON, MICHOD, DEHAAN
    & RICHTER, L.L.C.
30 S. Wacker Drive, #2300
Chicago, Illinois 60606
Phone: 312-236-6700

# ORIGINAL IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

|  |  |  |
|---|---|---|
| JOHN HENRY PACE and<br>BARON & BUDD, P.C. | § | |
| | § | |
| *Appellants*, | § | CASE NO. 08-C-945 |
| | § | |
| vs. | § | The Honorable David H. Coar |
| | § | **FILED** |
| AMERICAN INTERNATIONAL<br>GROUP, INC | § | |
| | § | APR 07 2008 EA |
| | § | Apr 7, 2008 |
| *Appellee.* | § | MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |

On appeal from the United States Bankruptcy Court
for the Northern District of Illinois, Eastern Division
Case No.02B 21522
Adversary Proceeding No. 06-1329

## BRIEF OF THE APPELLANTS

Brent M. Rosenthal, Esq.
(*pro hac vice*)
Texas State Bar No. 17281075
BARON & BUDD P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, Texas 75219
Telephone No.: 214-521-3605
Facsimile No.: 214-520-1181
*Lead Counsel for Appellants*

Marc Chalfen, Esq.
ARDC No. 00422584
David Adduce, Esq.
ARDC No. 6203603
James Stephenson, Esq.
ARDC No. 6287477
KELLY, OLSON, MICHOD, DEHAAN
& RICHTER, L.L.C.
30 S. Wacker Drive, #2300
Chicago, Ill. 60606
Telephone No.: 312-236-6700
Facsimile No.: 312-236-6706
*Local Counsel for Appellants*

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES PRESENTED AND
    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.    THE BANKRUPTCY COURT HAD NO JURISDICTION TO ENJOIN PACE
        FROM ENFORCING HIS CONTRACT CLAIM AGAINST NON-DEBTOR AIG. . . . . . . . . 7

    II.    THE BANKRUPTCY COURT ERRED IN ORDERING THE INJUNCTION BASED
        ON ITS LEGAL CONCLUSION THAT THE BANKRUPTCY PLAN DOCUMENTS
        AFFECT IN ANY WAY PACE'S ABILITY TO ENFORCE HIS CONTRACT
        CLAIM AGAINST AIG. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.    Neither the Plan of Reorganization, the Confirmation Order,
            the Channeling Injunction, Nor the Granite State Asbestos
            Coverage Settlement Discharged or Released AIG's Contract
            Obligation to Pace. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            1.    Pace's contract claim against AIG is not "based upon,"
                "related to," or "connected with" a claim "released" by
                the plan of reorganization. . . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.    For the Purpose of Pace's Contract Claim, AIG Is Not a
                "Released Party" Under the Plan Documents. . . . . . . . . . . . . . 14

        B.    The Bankruptcy Court's Injunction Was Based on Its Legal
            Errors in Construing the Plan Documents and Should Therefore
            Be Reversed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION AND PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Celotex Corp. v. Edwards,*
514 U.S. 300 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Commercial Loan Corp.,*
363 B.R. 559 (N.D. Ill. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cytomedix, Inc. v. Perfusion Partners & Assoc.,*
243 F.Supp.2d (N.D. Ill. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re FedPak Sys., Inc.,*
80 F.3d 207 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 13

*Fogel v. Zell,*
221 F.3d 955 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Goldblatt's Bargain Stores, Inc.,*
No. 04-C-3024, 2007 WL 1052484 (N.D. Ill. Apr. 3, 2007) . . . . . . . . . . . . . . . . . . . . . 1

*In re Memorial Estates, Inc.,*
950 F.2d 1364, 1368 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Midway Airlines, Inc.,*
383 F.3d 663 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Pacor, Inc. v. Higgins,*
743 F.2d 984 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Teknek LLC,*
No. 07-C-5229, 2007 WL 4557813 (N.D.Ill. Dec. 21, 2007) . . . . . . . . . . . . . . . . . . . 1, 14

*Zerand-Bernal Group, Inc. v. Cox,*
23 F.3d 159 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## TABLE OF AUTHORITIES, *Con't.*

### Statutes                                                    Page(s)

28 U.S.C. § 158(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1334(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

### Other Authorities

BLACK'S LAW DICTIONARY (6th ed. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Gerald T. Dunne, *The Bottomless Pit of Bankruptcy Jurisdiction,*
112 BANKING L.J. 957 (Nov.-Dec. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This is an appeal of a final judgment of injunction entered by the bankruptcy court on January 10, 2008. Appellants timely filed their Notice of Appeal on January 18, 2008. The appeal was docketed in this Court on February 15, 2008, and the Court, by an order entered on agreed motion, extended the time for filing the brief to April 7, 2008. As this is an appeal from a final judgment, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

## STATEMENT OF THE ISSUES PRESENTED
## AND STANDARD OF REVIEW

1.   Whether the bankruptcy court erred in concluding that it had subject matter jurisdiction to enjoin defendant/appellant Pace's contract claim against non-debtor/plaintiff/appellee American International Group, Inc. ("AIG") in Texas state court.

    (a)   Whether the bankruptcy court erred in concluding that Pace's state court contract claim was "related to" this (ARTRA's) bankruptcy, when it is undisputed that Pace's claim did not seek to recover property of the debtor or of the trust created by the debtor, and there is no showing or allegation that AIG provided any of the funding for trust created by the plan of reorganization.

    (b)   Whether the bankruptcy court erred in concluding that AIG is a "released party" under the plan of reorganization and channeling injunction.

STANDARD OF REVIEW:   Whether the bankruptcy court had subject matter jurisdiction to issue the injunction requested by AIG is an issue of law subject to de novo review. *In re FedPak Sys., Inc.*, 80 F.3d 207, 211 (7th Cir. 1996); *In re Goldblatt's Bargain Stores, Inc.*, No. 04-C-3024, 2007 WL 1052484 (N.D. Ill. Apr. 3, 2007), at *2.

2.   Whether the bankruptcy court erred in enjoining Pace from enforcing AIG's liability under the contract executed by AIG in Texas.

STANDARD OF REVIEW:   "A bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo." *In re Midway Airlines, Inc.* 383 F.3d 663, 668 (7th Cir. 2004); *see also In re Teknek LLC*, No. 07-C-5229, 2007 WL 4557813 (N.D.Ill. Dec. 21,

1

2007) at *5 (describing the standards for reviewing a preliminary injunction issued by a bankruptcy court).

## STATEMENT OF THE CASE

This appeal involves a suit brought as an adversary proceeding seeking to enjoin a breach of a contract action in a Texas state court. Appellant John Henry Pace ("Pace") filed suit against Appellee American International Group, Inc. ("AIG"), in state court in Nueces County, Texas on April 27, 2006 after AIG failed to pay on a settlement contract that was executed to settle an underlying lawsuit.[1] The Texas trial court granted summary judgment in favor of Pace on October 26, 2006,[2] and AIG timely appealed. After AIG perfected its appeal but before oral argument in the Texas appeal, on April 6, 2007, AIG filed an Original Complaint and Request for Injunctive Relief in the United States District Court for the Northern District of Illinois, alleging that Pace's action in Texas against AIG was barred by a channeling injunction issued in a bankruptcy case in this District, *In re ARTRA Group, Inc.*, Case No. 02 B 21522.[3] The case was referred to the bankruptcy court that had presided over the ARTRA bankruptcy and issued the channeling injunction. Both AIG and Pace filed motions for summary judgment.[4] On January 10, 2008, the bankruptcy court entered a "Final Judgment of Injunction," granting summary judgment in favor of AIG, denying summary judgment for Pace, and enjoining continued prosecution of the Texas proceedings.[5] This appeal complains of the bankruptcy court's entry of the injunction and the disposition of the motions for summary judgment filed by AIG and Pace.

---

[1] Doc. No. 9 (Notice of Motion and Motion for Summary Judgment in Favor of American International Group, Inc.), Exhibit F.

[2] Doc. No. 24 (Notice of Motion and Motion for Summary Judgment in Favor of Defendants and Against Plaintiff), Exhibit I.

[3] Doc. No. 1 (containing Original Complaint and Request for Injunctive Relief).

[4] Doc. No. 9 (motion of AIG); Doc. No. 18 (motion of Pace and Baron & Budd).

[5] Doc. No. 45, signed Nov. 27, 2007 and entered Jan. 10, 2008 (Final Judgment of Injunction Including Findings of Fact and Conclusions of Law including Findings of Fact and Conclusions of Law).

## STATEMENT OF FACTS

The facts dispositive in this appeal are largely undisputed; the dispute arises from the legal consequences of those facts.

### A.     *Pace's Asbestos Personal Injury Claim Against Synkoloid/ARTRA*

In 1999, Appellant John Henry Pace filed suit in state court in Nueces County (Corpus Christi), Texas for asbestos-related injuries.[6]  In 2002, his case went to trial against a single defendant, The Synkoloid Company a/k/a Synkoloid, A Division of Muralo, Inc.  The jury returned a substantial verdict in favor of Pace, and on March 22, 2002 the trial court entered a final judgment against Synkoloid in the amount of $2,025,000.[7]

### B.     *Pace's Settlement with AIG*

On May 9, 2002, Pace settled his claim against Synkoloid for a total payment of $725,000.[8]  The written contract memorializing the settlement had four parties: (1) Pace; (2) ARTRA Group, Inc., the former parent and current successor-by-merger to Synkoloid and thus the entity responsible for the asbestos liabilities of Synkoloid; (3) Kemper Insurance Company; and (4) AIG, the appellee in this appeal.  Each of the parties had separate and independent obligations under the settlement contract.  Pace, of course, was required to release his claims against Synkoloid/ARTRA and its insurers under the judgment.  ARTRA was to pay Pace $197,707.50; Kemper was to pay $94,322.50; and AIG was to pay $432,970.00.  The payments were to be made by June 7, 2002.  The separate nature of these obligations is made clear by the following language in the contract:

> The Parties understand and agree that should ARTRA Group, Inc. fail to pay their portion of this settlement, Pace will not attempt to collect ARTRA Group's Inc.'s portion of this settlement directly from the insurers listed above in paragraph 2;

---

[6] Doc. No. 10 (Defendants' Response to American International Group, Inc.'s Statement of Undisputed Facts), at 10.

[7] Doc. No. 9 (AIG's Motion for Summary Judgment), Exhibit G.

[8] Doc. No. 9, Exhibit H.

provided, however, that nothing herein is intended to prevent or impede Pace from seeking to collect ARTRA Group, Inc.'s portion of the settlement from ARTRA Group itself, or from any other entity aside from the insurers listed in paragraph 2, regardless of from where the ultimate source of the funds for ARTRA Group, Inc.'s payment derives.[9]

In compliance with the settlement contract, Pace executed a Full and Final Release of All Claims and Indemnity Agreement in which it released ARTRA and all its insurers for asbestos related claims against Synkoloid.[10]  Kemper also complied with its obligation under the contract, paying Pace the required amount.[11]  But on June 3, 2002–four days before it was required to make its payment to Pace–ARTRA filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Illinois.[12]  Accordingly, ARTRA did not make the payment to Pace required by the contract.  Most pertinent to this proceeding, AIG did not pay Pace as it promised to do in the contract.[13]

## C.    Pace's Breach of Contract Suit Against AIG

On April 27, 2006, Pace filed a breach of contract suit against AIG in state court in Nueces County, Texas based on AIG's failure to pay.[14]  Pace filed a motion for summary judgment, and on October 26, 2006 the Texas trial court granted the motion, issuing a final judgment against AIG awarding the contract amount plus pre- and post-judgment interest and

---

[9] *Id.*

[10] Doc. No. 9, Exhibit J.

[11] Doc. No. 45 (Final Judgment of Injunction) at 10.

[12] Doc. No. 10 (Defendants' Response to American International Group, Inc.'s Statement of Undisputed Facts), at 10. The bankruptcy case was styled *In re ARTRA Group, Inc.*, No. 02-B-21522.

[13] Doc. No. 9, Exhibit J.

[14] Doc. No. 9, Exhibit H.

4

attorney's fees permitted by Texas law.[15]  Appellee filed appealed the judgment to the appropriate Texas court of appeals on January 24, 2007.[16]

### D.    The ARTRA Bankruptcy

Meanwhile, in the ARTRA bankruptcy, ARTRA reached a settlement of its insurance coverage for asbestos personal injury claims with Granite State Insurance Company.  In the settlement agreement, ARTRA released not only Granite State but also its "parents" and "holding companies" from claims "based upon, arising directly or indirectly, out of events concerning or related to the Claims and Policies."[17]  AIG is a parent and holding company of Granite State,[18] although it is not identified by name in the settlement agreement.  The bankruptcy court approved the settlement agreement in an order entered on April 26, 2006.[19]

ARTRA and the Creditors' Committee in the ARTRA bankruptcy jointly filed a plan of reorganization on November 3, 2006, and a modified plan on January 24, 2007.[20]  Baron & Budd was a member of the Creditors' Committee, and Pace, a creditor of ARTRA because of the amount it owed to him under the May 9, 2002 agreement, voted for the plan.[21]  The plan creates a trust to which claims for asbestos-related personal injuries against Synkoloid/ARTRA would be channeled.[22]  The bankruptcy court confirmed the plan in an order entered on January 25, 2007. The court's order contains a "channeling injunction" prohibiting the prosecution "against any of the Released Parties" of any claim "based upon, related to, arising out of, or in any way connected

---

[15] Doc. No. 23, Exhibit I.

[16] Doc. No. 10, at 12.

[17] Doc. No. 9, Exhibit D (Settlement Agreement and Complete Policy Release), at 5, ¶ 1.10.

[18] Doc. No. 10, at 2.

[19] Doc. No. 9, Exhibit D (order is attached to Settlement Agreement).

[20] Doc. No. 9, Exhibit A, at 5.

[21] Doc. No. 10, at 5.

[22] Doc. No. 9, Exhibit A, at 5.

with any Released Claim, any Asbestos Personal Injury Claim or any Demand . . . ."[23]  The
glossary to the plan provides that the term "Released Parties" includes "those parties released
under the Granite State Asbestos Coverage Settlement . . . *but only to the extent provided for
thereunder*" (emphasis added).[24]

### E.   The Current Proceeding: AIG Sues Pace and His Counsel Based on the Alleged Protection of the ARTRA Bankruptcy Order.

On April 6, 2007, AIG filed its complaint in this case against Pace and his counsel, Baron
& Budd,[25] seeking an injunction prohibiting them from continuing to prosecute the Texas breach
of contract action against AIG.  In its complaint, AIG alleged that Pace violated the channeling
injunction issued in the ARTRA bankruptcy because Pace was seeking to enforce a claim "based
upon, related to, arising out of, or in any way connected with a claim released in the ARTRA
bankruptcy and because AIG was a "released party" under that bankruptcy.[26]  AIG moved for
summary judgment;[27] Pace opposed AIG's motion and filed his own cross-motion.[28]  In his
response and motion, Pace argued that because his Texas action only involved a non-debtor and
could not conceivably affect the amount of the debtor's property available for distribution to other
creditors (especially as the bankruptcy was concluded), the bankruptcy court lacked subject-
matter jurisdiction to enter the requested  injunction.[29]  He also argued that his maintenance of the

---

[23] Doc. No. 9, Exhibit A, at 31-32.

[24] Doc. No. 9, Exhibit C, at 10, ¶ 1.82.

[25] Henceforth, appellants Pace and Baron & Budd will be referred to collectively as "Pace."

[26] Doc. No. 1 (Original Complaint and Request for Injunctive Relief), at 8-10,

[27] Doc. No. 9.

[28] Docs. Nos. 18 and 23.

[29] Doc. No. 18, at 2-6.

Texas action did not violate the channeling order because he did not seek to enforce a "released claim" against a "released party."[30]

After considering the motions of the parties, the bankruptcy court issued a "Final Judgment of Injunction Including Findings of Fact and Conclusions of Law." The bankruptcy court concluded as a matter of law, among other things, that AIG is "a 'Released Party' within the meaning of" the channeling injunction; that Pace's breach of contract claim in Texas against AIG "is 'based upon,' 'related to,' and 'connected with' a Released Claim;" and that "the continued prosecution of the Texas Action has been prohibited by the Injunction and continues to be prohibited by the Injunction."[31] The bankruptcy court permanently enjoined Pace from continuing to prosecute his breach of contract claim in Texas against AIG. Pace timely appealed the bankruptcy court's judgment to this Court.

## ARGUMENT

**I.    The Bankruptcy Court Had No Jurisdiction To Enjoin Pace from Enforcing His Contract Claim Against Non-Debtor AIG.**

Pace did not assert his contract claim in Texas against debtor ARTRA or against property of ARTRA. Nor did he seek any property in which ARTRA had a remote, contingent, or even speculative interest. Rather, he sought only to enforce AIG's entirely separate and independent contractual obligation to him. AIG conceded as much in its summary judgment pleadings in this case: "This action does not relate to property of the Estate. To the contrary, AIG, Inc. now seeks to protect its own property."[32]

As the Supreme Court has stated, it is "clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." *Celotex Corp. v. Edwards*, 514 U.S. 300,

---

[30] Doc. No. 18, at 2, 6-8.

[31] Doc. No. 45 (Final Judgment of Injunction Including Findings of Fact and Conclusions of Law including Findings of Fact and Conclusions of Law), at 11-12.

[32] Doc. No. 9 (Memorandum of Law in Support of Plaintiff American International Group, Inc.'s Motion for Summary Judgment or in the Alternative for a Preliminary Injunction), at 8.

308 n.6 (1995). AIG argued below, however, that the bankruptcy court had jurisdiction and could issue the requested injunction because Pace's claim against AIG is "related to" ARTRA's bankruptcy, supporting the exercise of jurisdiction under 28 U.S.C. § 1334(b). Specifically, AIG asserted that because AIG entered its separate contract with Pace only because of a liability that Pace was asserting against ARTRA, the bankruptcy court could exercise its "related to" jurisdiction to intervene in Pace's state law claim against AIG.

But the very purpose of the contract was to convert any potential obligation owed by AIG to Pace for his asbestos injuries from an indirect liability owed through ARTRA into a direct contractual liability to Pace independent of the underlying claim. Once AIG executed the contract, any "relationship" between AIG's liability to plaintiff and the asbestos claim Pace held against ARTRA was severed. The contract sets forth the specific, independent obligations of the parties and expressly unties any connection between ARTRA's liability to Pace for asbestos disease and the contractual obligation to pay Pace owed by the insurers.

The federal circuits have articulated different tests for determining whether a controversy is "related to" a bankruptcy proceeding permitting the exercise of federal bankruptcy jurisdiction under 28 U.S.C. § 1334(b). The test used by the Third Circuit asks whether the outcome of the proceeding *"could conceivably have any effect"* on the estate being administered in bankruptcy. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984 ). This Circuit, however, has articulated "a more limited and . . . more helpful definition of the bankruptcy court's 'related to' jurisdiction." *In re FedPak Sys., Inc.*, 80 F.3d 207, 213 (7th Cir. 1996). A federal court may exercise bankruptcy jurisdiction only when "the dispute 'affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors.'" *Id.* at 213-14 (quoting *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1987). Moreover, once–as in this case–the chapter 11 plan has been confirmed, "related to" jurisdiction is "sharply reduced." *Cytomedix, Inc. v. Perfusion Partners & Assoc.*, 243 F.Supp.2d 786, 789 (N.D. Ill. 2003). This is because "[o]n confirmation, the bankruptcy estate ceases to exist unless the plan provides otherwise." *In re Commercial Loan Corp.*, 363 B.R. 559, 565 (N.D. Ill. 2007). Thus, there is no longer any debtor or creditor for the bankruptcy court to protect.

8

The Seventh Circuit considered and rejected an invocation of bankruptcy jurisdiction similar to that attempted by AIG in this case in *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994). In that case the debtor ("Cary"), like ARTRA here, was a prospective product liability defendant. To increase the size of the bankruptcy estate available to creditors, it negotiated a sale of its manufacturing equipment to a non-debtor, Zerand-Bernal Group, Inc. ("Zerand"), which agreed to buy the equipment subject to the entry of an order by the bankruptcy court approving the sale and reserving bankruptcy jurisdiction to enjoin the prosecution of product liability claims against Zerand based on sales made prior to the purchase of the equipment. The bankruptcy court entered the requested order. Four and a half years later, a man and his wife ("the Coxes") sued Zerand in state court in Pennsylvania for injuries caused by a product made and sold by the debtor. Like AIG here, Zerand filed an adversary complaint asking the bankruptcy court to exercise the jurisdiction it had expressly reserved for itself and to enjoin the maintenance of the state court action. The bankruptcy court held that despite its attempt to retain jurisdiction, it lacked subject-matter jurisdiction to enter the injunction. 23 F.3d at 161.

The Seventh Circuit affirmed, holding that the dispute between Zerand and the Pennsylvania plaintiffs neither was "related to" nor "arose in" the debtor's bankruptcy as required by the jurisdictional statute, 28 U.S.C. § 1334(b). In an opinion by Judge Posner, the court noted that "[t]aken at its full breath," the language of the statute would allow the exercise of jurisdiction, because the adversary proceeding "relates to the bankruptcy sale at which it acquired Cary's assets and thereby exposed itself, as it turns out, to the Coxes' suit." 23 F.3d at 161. But, the court added, "the language should not be read so broadly." *Id.* Bankruptcy jurisdiction, the court observed, is intended primarily to encompass claims against the debtor, and secondarily to force into bankruptcy court claims that may affect the amount of property in the bankruptcy estate. *Id.* at 161-62. Because the Coxes did not sue the debtor or assert claims that would affect the size of the estate, their suit–and the adversary proceeding which was its "mirror image"– were not "proceedings 'related to' the Cary bankruptcy, within the meaning of section 1334." *Id.* at 162.

Nor did the adversary proceeding "arise under" the Bankruptcy Code despite Zerand's reliance on provisions relating to the sale in the bankruptcy court's orders. "The fact that a claim

9

has a distant federal origin does not confer 'arising under' jurisdiction." 23 F.3d at 162. The relation of the dispute between the non-debtors was "too tenuous to empower the bankruptcy court, through a capacious interpretation of the 'arising under' jurisdiction, to adjudicate a tort suit to which the debtor is not even a party, years after the bankruptcy was wound up." *Id.* Noting that the federal interest was merely "tenuous," not "nonexistent," the court acknowledged that its refusal to authorize intervention in the state court proceedings might depress the sales price of the bankrupt's assets, to the prejudice of creditors, in future bankruptcies. But the court found that possible consequence to be offset by the risk that an expansive interpretation of bankruptcy jurisdiction might not only harm creditors but might also provide "a further incentive to enter bankruptcy for reasons that have nothing to do with the purpose of bankruptcy law." *Id.* at 163.

It is true that the Coxes in *Zerand-Bernal*, unlike Pace here, were not participants in the previous bankruptcy proceeding. But the Seventh Circuit anticipated and rejected that distinction, noting that the Coxes' hypothetical participation in the bankruptcy might have affected the strength of their underlying claim, but would not have authorized the bankruptcy court to intervene in the state court proceedings. 23 F.3d at 163. The court explained that the Coxes' participation would have jeopardized their claim "not because the bankruptcy court could and would enjoin such a suit" but because, as a matter of Pennsylvania law, "the successorship doctrine on which they rely is inapplicable if the plaintiff had a chance to obtain a legal remedy against the predecessor." *Id.* And "still Zerand would have to interpose its defense in the Pennsylvania suit. It could not go to the bankruptcy court for relief." *Id.*

*Zerand-Bernal* is still good law in this Circuit, and it is dispositive in this case. Like Zerand, AIG asked to invoke the bankruptcy court's jurisdiction to intervene in a state court proceeding that could not conceivably have an affect the debtor or the debtor's estate. As in *Zerand-Bernal*, the bankruptcy court's interest in protecting the debtor and its estate has long since ended. And as in *Zerand-Bernal*, any defense inuring to the non-party that results from the participation of the claimant in the bankruptcy can be asserted in the state court proceeding. The bankruptcy court thus erred as a matter of law when it exercised jurisdiction to enjoin Pace from continuing to assert his contract action in Texas state court.

10

II.    **The Bankruptcy Court Erred in Ordering the Injunction Based on Its Legal Conclusion That the Bankruptcy Plan Documents Affect in Any Way Pace's Ability To Enforce His Contract Claim Against AIG.**

A.    **Neither the Plan of Reorganization, the Confirmation Order, the Channeling Injunction, Nor the Granite State Asbestos Coverage Settlement Discharged or Released AIG's Contract Obligation to Pace.**

The essential premise of AIG's argument, and the bankruptcy court's ruling, that Pace can and should be enjoined from seeking enforcement of AIG's contractual obligation to him in Texas state court is that something in the ARTRA bankruptcy–whether it is the plan of reorganization, the order confirming the plan, the channeling injunction, or the Granite State settlement with ARTRA of its insurance coverage–discharges or resolves the obligation.  Specifically, AIG's theory, tracked by the bankruptcy court in its final judgment of injunction, is as follows:

1.    AIG is a holding company and was the parent of Granite State Insurance Company, an insurer of ARTRA.

2.    Granite State fully resolved its obligations to ARTRA in a settlement that was approved by the bankruptcy court.

3.    ARTRA's release of Granite State included a release of Granite State's parent, AIG, although not by name; AIG was released as a "parent" and "holding company" of Granite State.

4.    The settlement between ARTRA and Granite State was incorporated in ARTRA's plan of reorganization, for which Mr. Pace voted.

5.    The plan of reorganization, which discharged all of ARTRA's liabilities to its creditors, also discharged Granite State's–and AIG's–liabilities to ARTRA's creditors for asbestos-related personal injury claims and all claims "related to" such claims.

The bankruptcy court concluded as a matter of law that Pace's contract claim against AIG is "based upon," "related to," and "connected with his "released claim" against ARTRA.  That claim, concluded the court, is therefore released by the plan of reorganization, and Pace's attempt to enforce the claim is prohibited by the channeling injunction.

Although the bankruptcy court accurately recited the facts derived from the bankruptcy documents, its legal conclusions drawn from those facts–reviewable *de novo* by this Court–are incorrect. Specifically, Pace's contract claim against AIG *cannot* be considered "based on," "related to," or "connected with" Pace's "released claim" against ARTRA, as those terms are used in bankruptcy law. Additionally, AIG is not a "Released Party" under the bankruptcy plan documents, because those the release of AIG is expressly limited to its obligations under the insurance contracts executed by it or its subsidiaries, and does not cover the type of independent contract claim that Pace seeks to assert in Texas. Because the plan documents themselves do not release, discharge, or impair in any way Pace's contract claim against AIG, the bankruptcy court erred in granting AIG's request for an injunction against the Texas proceeding.

> **1.    Pace's contract claim against AIG is not "based upon," "related to," or "connected with" a claim "released" by the plan of reorganization.**

The channeling order, upon which AIG and the bankruptcy court relied to justify the injunction against Pace's state court action in Texas, restrains creditors of ARTRA from enforcing against a "released party" any claim "based upon, relating to, arising out of, or in any way connected with" any "Released Claim or Asbestos Personal Injury Claim." It is clear that Pace's personal injury claim against Synkoloid/ARTRA is a released claim covered by the channeling order. It is also clear that if Pace were asserting a claim against AIG for his personal injuries based on insurance coverage extended to Synkoloid/ARTRA by AIG or its subsidiaries, that claim would be covered by the channeling order. But the bankruptcy court was wrong in concluding that Pace's claim against AIG for breaching its promise to pay him *independent of any liability to him of ARTRA* is "based upon," "related to," or "connected with" the personal injury claim within the meaning of the plan documents and general principles of bankruptcy law.

The very purpose of the contract between Pace and AIG was to create an obligation *separate from* and *unrelated to* Synkoloid's liability to Pace on the judgment in his personal injury case. The liabilities of the three settling parties–ARTRA, Kemper, and AIG–are separately set forth in the settlement contract, and the contract explicitly states that the failure of one party to perform under the contract does not increase or otherwise affect the contractual obligations of the

12

other parties. The intent of the settling parties, including AIG, couldn't be clearer: to create contractual obligations *un*related to and *dis*connected from the tort liability of Synkoloid/ARTRA to Pace.

The bankruptcy court also implied, by citing it in its findings, that the "Granite City Asbestos Coverage Settlement" somehow barred Pace from enforcing AIG's separate contractual obligation. But the settlement between Granite State (and AIG) and ARTRA, by its terms, is limited to the insurers' liability to ARTRA under the insurance contracts. It does not, and could not, resolve AIG's direct, independent liability to Pace under the written contract in Texas. *See Fogel v. Zell*, 221 F.3d 955, 964 (7th Cir. 2000) ("two parties cannot agree to extinguish the claim of a third party not in privity with either of them."). And because the Granite State settlement did not purport to extinguish Pace's claim against AIG, the Pace's tacit consent to the settlement reflected by his vote in favor of the plan of reorganization does *not* reflect his consent to a release of his contract claim. Put simply, nothing in the Granite State insurance settlement with ARTRA limits Pace's ability to enforce his contract with AIG in Texas.

The Seventh Circuit has observed that "common sense cautions against an open-ended interpretation of the 'related to' statutory language 'in a universe where everything is related to everything else.'" *In re Fedpak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) (quoting Gerald T. Dunne, *The Bottomless Pit of Bankruptcy Jurisdiction*, 112 BANKING L.J. 957 (Nov.-Dec. 1995). The same common sense cautions against an open-ended interpretation of the terms "related to" and "connected with" when they are used in a contract or order. Black's Law Dictionary defines "connected" to mean "Joined; united by junction, by an intervening substance or medium, by dependance or relation, or by order in a series." BLACK'S LAW DICTIONARY 302 (6th ed. 1990). That same source defines "related" to mean "Standing in relation; connected; allied; akin." BLACK'S LAW DICTIONARY 1288 (6th ed. 1990). Pace's contract claim against AIG is not "joined" with, "dependent" on, or "allied" with his personal injury claim; none of the evidence supporting the personal injury claim is even relevant in his contract action. The bankruptcy court erred as a matter of law in failing to give the terms "based upon," "related to," and "connected with" their common, unambiguous, and common sense meaning.

13

2.    **For the Purpose of Pace's Contract Claim, AIG Is Not a "Released Party" Under the Plan Documents.**

The channeling injunction protects only "released parties" from the enforcement of claims described in the plan. As is noted in the bankruptcy court's findings, the glossary to the plan documents defines "released parties" to include "those parties released under the Granite State Asbestos Coverage Settlement," which includes AIG. But the definition also contains an important, and in this case outcome-determinative, limitation: it includes the Granite State released parties "only to the extent provided for" under the Granite State Asbestos Coverage Settlement. The Granite State Asbestos Coverage Settlement *only* releases Granite State's (and AIG's) insurance coverage obligation to ARTRA; it does not, and cannot, release AIG's independent contractual obligation to Pace. The plain language of the plan, then, denies AIG protection from Pace's contract claim in Texas. The bankruptcy court erred in concluding that AIG was a "released party" and entitled to injunctive relief under the channeling order.

B.    **The Bankruptcy Court's Injunction Was Based on Its Legal Errors in Construing the Plan Documents and Should Therefore Be Reversed.**

In its Conclusions of Law, the bankruptcy court stated that "Defendant Pace's Claim against AIG, Inc. is 'based upon,' 'related to,' and 'connected with' a Released Claim" and that "Plaintiff AIG, Inc. is a 'Released Party' within the meaning of the injunction."[33] As is demonstrated above, this was a misconstruction of both the law and the plan documents. Pace's breach of contract claim against AIG is *unrelated* to any claim released by ARTRA's bankruptcy, and AIG is *not* a "released party" as defined by the plan documents. The bankruptcy court's conclusions of law are entitled to no deference on appeal. *In re Midway Airlines, Inc.* 383 F.3d 663, 668 (7th Cir. 2004); *see also In re Teknek LLC*, No. 07-C-5229, 2007 WL 4557813 (N.D.Ill. Dec. 21, 2007) at *5. Because its order of injunction was based on an error of law, it is defective and should be reversed.

---

[33] Doc. No. 45 at 12, ¶¶ GG and FF.

14

## CONCLUSION AND PRAYER FOR RELIEF

The bankruptcy court lacked jurisdiction to enjoin Pace's Texas action for breach of contract against nondebtor AIG. Even if the court had jurisdiction, it erred in interpreting the plan documents to preclude Pace's contract action in Texas state court against AIG. The bankruptcy court's final judgment of injunction should therefore be reversed, and judgment should be rendered against AIG and in favor of appellants/defendants Pace and Baron & Budd on AIG's adversary proceeding.

Respectfully Submitted,
BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, Texas   75219-4281
Tel.: 214/521-3605; Fax.: 214/520-1181

BY: _____

BRENT M. ROSENTHAL (*pro hac vice*)
Texas State Bar No. 17281075
*Lead Counsel for Appellants*

- *and* -

Marc Chalfen, Esq.
ARDC No. 00422584
David Adduce, Esq.
ARDC No. 6203603
James Stephenson, Esq.
ARDC No. 6287477
KELLY, OLSON, MICHOD, DEHAAN
     & RICHTER, L.L.C.
30 S. Wacker Drive, #2300
Chicago, Ill.  60606
Telephone No.: 312-236-6700
Facsimile No.: 312-236-6706
*Local Counsel for Defendants/Appellants*

15