IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., <br><br> Appellee, <br><br> ~ against ~ <br><br> BARON & BUDD, P.C. and JOHN HENRY PACE, <br><br> Appellants. | § § § § § § § § § § § § § <br><br> Civil Case No. 08-C-945 <br><br> Hon. David H. Coar |

On appeal from the United States Bankruptcy Court
for the Northern District of Illinois, Eastern Division
Case No. 02B 21522
Adversary Proceeding No. 06-1329

---

**BRIEF OF THE APPELLEE**

---

Michael S. Davis *(Bar I.D. No. 1226851)*
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400 (telephone)
(212) 753-0396 (fax)
*Lead Counsel for Appellee*

Margaret J. Orbon *(Bar I.D. No. 2114925)*
Colleen Brown *(Bar I.D. No. 6269463)*
John F. O'Brien III *(Bar I.D. No. 6290370)*
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
(312) 855-1010 (telephone)
(312) 606-7777 (fax)
*Local Counsel for Appellee*

*(Additional Counsel listed on following page)*

James V. Hoeffner *(Bar I.D. No. 09772700)*
THOMPSON COE COUSINS & IRONS, LLP
701 Brazos, Suite 1500
Austin, Texas 78701
(512) 703-5070 (direct)
(512) 708-8777 (fax)
(Admitted to the U.S.D.C. for the N. Dist. of Ill.)

Guy N. Webster *(Bar I.D. No. 140427)*
LYNBERG & WATKINS
888 S. Figueroa Street, 16th Floor
Los Angeles, California 90017-2516
(213) 624-8700 (telephone)
(213) 892-2763 (fax)
(Admitted to the U.S.D.C. for the N. Dist. of Ill.)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

COUNTERSTATEMENT OF ISSUE PRESENTED ....................................................... 1

STANDARD OF REVIEW .................................................................................................. 1

COUNTERSTATEMENT OF THE CASE ........................................................................ 1

COUNTERSTATEMENT OF FACTS ............................................................................... 3

      A.    The ARTRA Bankruptcy Case And The Section 524(g) Channeling Injunction ................................................................................................. 3

      B.    The Texas Proceedings ............................................................................. 7

      C.    The Granite State Proceedings ................................................................. 7

      D.    The Instant Action To Enforce The Channeling Injunction ....................... 8

ARGUMENT .......................................................................................................................... 8

I.      THE BANKRUPTCY COURT HAS THE AUTHORITY TO ISSUE THE CHANNELING INJUNCTION ....................................................... 8

II.     BY ITS PLAIN TERMS, THE CHANNELING INJUNCTION APPLIES TO THE TEXAS ACTION ...................................................... 10

III.    THE COURT SHOULD PRECLUDE DEFENDANTS FROM RAISING ANY 524(G) ARGUMENTS IN THEIR REPLY, OR, IN THE ALTERNATIVE, PERMIT AIG, INC. TO FILE A SUR-REPLY BRIEF IN RESPONSE ............................................................. 12

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Other Authorities**

Beerly v. Department of the Treasury, 768 F.2d 942, 949 (7th Cir. 1985) .................... 13

Bugg v. Industrial Workers Local 507, 674 F.2d 595, 598 n. 4 (7th Cir. 1982) ............. 13

Celotex Corp. v. Edwards, 514 U.S. 300 (1995) .............................................................. 9

Cytomedix, Inc. v. Perfusion Partners & Assoc., 243 F.Supp.2d 786 (N.D. Ill. 2003) .................................................................................................................... 9

Duggan v. Board of Education, 818 F.2d 1291, 1293 (7th Cir. 1987) ........................... 13

Finsky v. Union Carbide Corp., 249 F.2d 449, 459 (7th Cir. 1957) ............................... 13

FTC v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1025-26 (7th Cir. 1988) ................................................................................................................... 13

Home, Inc. v. Medical Capital, LLC, 260 F.3d 748, 753 n.2 (7th Cir. 2001) .......... 13, 15

In re Bear, 789 F.2d 577, 579-580 (7th Cir. 1986) ......................................................... 13

In re Commercial Loan Corp., 363 B.R. 559, 565 (N.D. Ill. 2007) ................................. 9

In re FedPak Sys., Inc., 80 F.3d 207 (7th Cir. 1996) ........................................................ 9

In re Midway Airlines, Inc., 383 F.3d 663, 668 (7th Cir. 2004) ....................................... 1

King v. Ill. State Bd. of Elections, 410 F.3d 404, 424 (7th Cir. 2005) ........................... 10

Kraft-Egert v. Connecticut General Life Ins. Co., 900 F.2d 1032, 1035 (7th Cir. 1990) ......................................................................................................... 13, 14, 15

Myron v. Chicoine, 678 F.2d 727, 732 n. 8 (7th Cir. 1982) ........................................... 13

Official Committee of Unsecured Creditors of Artra Group, Inc. v. Artra Group, Inc. (In re Artra Group, Inc.), 300 B.R. 699, 703-704 (Bankr. N.D. Ill. 2003) ............. 9

Pacor, Inc. v. Higgins, 743 F.2d 984 (7th Cir. 1984) ....................................................... 9

United States v. Goodwin, 770 F.2d 631, 640 n. 4 (7th Cir. 1985) ................................ 13

United States v. Michigan Carton Co., 552 F.2d 198, 201 (7th Cir. 1977) .................... 13

Weigel v. Target Stores, 122 F.3d 461, 464 (7th Cir. 1997) ..................................... 10, 11

Wilson v. O'Leary, 895 F.2d 378, 384 (7th Cir. 1990) ....................................... 13, 14, 15

Wood v. Worachek, 618 F.2 1225, 1228 n. 1 (7th Cir. 1980) ........................................ 13

Zerand Bernal Group, Inc. v. Cox, 23 F.3d 159 (7th Cir. 1994) ...................................... 9

**Regulations**

11 U.S.C. § 524(e) ............................................................................................................ 2

11 U.S.C. § 524(g) .......................................................................................................... 12

11 U.S.C. § 524(g)(1)(A) ................................................................................................... 10

11 U.S.C. § 524(g)(2)(A) ..................................................................................................... 2

11 U.S.C. 524(g) ........................................................................................................... 8, 12

Bankruptcy Code - 11 ........................................................................................................ 1

Code in 1994 ............................................................................................................. 2, 3, 9

Illinois 60603-1098 ........................................................................................................... 15

U.S.C. § 524(g) ................................................................................................................... 1

## COUNTERSTATEMENT OF ISSUE PRESENTED

Whether the Bankruptcy Court properly enforced the Asbestos Permanent Channeling Injunction issued as part of the Confirmation Order entered by this District Court, upon finding that Plaintiff-Appellee is a "Released Party" within the meaning of the Injunction and Defendants-Appellants claim is "based upon," "related to," and/or "connected to" a Released Claim?

It is respectfully submitted that the answer to this issue is "yes."

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are review for clear error; its conclusions of law are reviewed *de novo*. In re Midway Airlines, Inc., 383 F.3d 663, 668 (7th Cir. 2004).

## COUNTERSTATEMENT OF THE CASE

By their appeal, defendant-appellants Baron & Budd P.C. and John Henry Pace (jointly, "Defendants") challenge a unique amendment to the Bankruptcy Code – 11 U.S.C. § 524(g) – that protects non-debtors like plaintiff-appellee American International Group, Inc. ("AIG, Inc.") from asbestos-related liability, through the mechanism of an Asbestos Permanent Channeling Injunction.

Defendants knew of, supported, and voted for the Asbestos Permanent Channeling Injunction at issue here (the "Channeling Injunction" or "Injunction") as part of the confirmation of the underlying Amended Joint Reorganization Plan ("Plan") in an asbestos-related bankruptcy case, In re ARTRA Group, Inc., Case No. 02 B 21522. Yet, Defendants still tried to circumvent the Injunction, by seeking asbestos-related recovery against non-debtor AIG, Inc. in a Texas state action entitled Pace v. American International Group, Inc., Cause No. 06-2150-A (the "Texas Action"). To prevent Defendants from circumventing the Injunction, the Bankruptcy Court issued the Final Judgment of Injunction Defendants now appeal. For the reasons discussed herein, Defendants' appeal should be denied.

Until 1994, § 524(e) of the Bankruptcy Code (the "Code") provided, without

1

relevant exception, that "discharge of the debt of the debtor does not affect the liability of any other entity." 11 U.S.C. § 524(e). Thus, until 1994, the bankruptcy process did not protect non-debtors who were liable for the same claims as the debtor. However, in response to the unprecedented challenges posed by asbestos liability, Congress amended the Code in 1994 to add § 524(g). Among other things, § 524(g) authorizes entry of a "channeling injunction" designed specifically to protect non-debtors in asbestos cases. Id.

Section 524(g) provides that entities other than the debtor may have their co-obligations for asbestos-related debts of the debtor eliminated by such a channeling injunction. Accordingly, a 524(g) injunction protects non-debtors, and thus the property of non-debtors. Moreover, § 524(g)(3)(A)(i) provides that once the time to appeal such an channeling injunction has lapsed (as it has in this case), the injunction "shall be valid and enforceable and may not be revoked or modified..." Collier on Bankruptcy describes this section as "an extraordinary effort [by Congress] to give comfort to financial institutions." 4 Collier On Bankruptcy, § 524.07[3].

In reliance upon the protections provided by this unique legislation, over $30 billion has been paid since 2000, including the $58 million paid in connection with the Plan at issue here.[1] All these payments, and the Congressionally mandated protection of non-debtors embodied in § 524(g), is now threatened by these Defendants, who approved of the very Plan and Injunction they now seek to circumvent.

AIG, Inc. commenced an action in this judicial district against Defendants to enforce the Channeling Injunction against Defendants and permanently enjoin further proceedings in the Texas Action, brought by Mr. Pace through his attorneys, Baron & Budd.[2] On November 27, 2007, the Bankruptcy Court granted AIG, Inc. summary

---

[1]   Shelly, Cohn & Arnold, *The Need For Transparency Between the Tort System and Section 524(g) Asbestos Trusts*, 17 Norton J. of Bankruptcy Law 257 (2008).

[2]   This action was commenced in the District Court in accordance with 11 U.S.C. § 524(g)(2)(A), which provides that the District Court "shall have exclusive jurisdiction over" any proceeding involving the Injunction. On June 14, 2007, Judge Kennelly referred
(continued . . .)

2

judgment, and issued a Final Judgment of Injunction that "permanently restrained and enjoined [Defendants] from asserting any further proceedings" in the Texas Action. In so doing, the Bankruptcy Court merely enforced the pre-existing Injunction, issued pursuant to § 524(g) of the Code, that is part of the Order Confirming the Plan. AIG, Inc. is entitled to the benefit of the Injunction under the Plan because AIG, Inc. subsidiary, Granite State,[3] agreed to pay more than $58,000,000 in insurance proceeds to an asbestos trust for the benefit of ARTRA's present and future asbestos claimants, including Mr. Pace. Baron & Budd, as a member of the ARTRA Creditors Committee, was well aware of the contents and language of the Plan, and supported confirmation of the Plan. Mr. Pace expressly voted to accept the Plan. And, this Court confirmed the Bankruptcy Court's entry of the Plan.

The issues before the Bankruptcy Court below were narrow and straightforward. The Channeling Injunction permanently enjoins "all Entities" from asserting against any "Released Party" any Claim, demand, or cause of action "based upon, relating to, arising out of, or in any way connected with any Released Claim." Examining the plain language of the Plan, the Bankruptcy Court readily found that AIG, Inc. was a "Released Party" and that the claim in the Texas Action was "based upon," "related to" and "connected with" a Released Claim. See Final Judgment of Injunction. Accordingly, the Bankruptcy Court enforced the pre-existing Injunction against Defendants and the Texas Action. Id. This Court should affirm.

<strong><u>COUNTERSTATEMENT OF FACTS</u></strong>

A.  **The ARTRA Bankruptcy Case And
    <u>The Section 524(g) Channeling Injunction</u>**

On June 3, 2002, ARTRA filed a voluntary Chapter 11 petition in this Court

---

( . . . continued)
    the matter to the Bankruptcy Court.

[3]  Capitalized Terms have the meaning set forth in the Glossary of Terms set forth in the Plan. The Glossary was adopted as part of the Confirmation Order.

captioned In re ARTRA Group, Inc., Case No. 02 B 21522 (the "ARTRA Bankruptcy Case"). On December 3, 2006, ARTRA and the Creditors' Committee, which included Baron & Budd, filed their amended joint Plan. The Plan was modified on January 24, 2007. On January 25, 2007 the Bankruptcy Court entered the Confirmation Order. On February 16, 2007, this Court affirmed the Confirmation Order. See Order Affirming Order Confirming Amended Joint Plan of ARTRA Group, Incorporated, As Modified (the "District Court Confirmation Order").

Paragraph 12 of the Confirmation Order contains the Channeling Injunction and states in relevant part that:

> a. In order to preserve and promote the settlements contemplated by and provided for in the Plan [including the Granite State Asbestos Coverage Settlement] . . . all Entities which have held or asserted, which hold or assert any Claim, demand (including any Demand), or cause of action (including, but not limited to, any Asbestos Personal Injury Claim and any Asbestos Trust Expense of the Trust) against the Released Parties, or any of them, based upon, relating to, arising out of, or in way connected with any Released Claim or any Asbestos Personal Injury Claim, whenever and wherever arising or asserted (including, but not limited to, all such claims in the nature of or sounding in tort, contract, warranty or any other theory of law, equity, or admiralty) or against any Interest shall be permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim, demand, cause of action, or Interest, including, but not limited to:
>
> i. commencing or continuing in any manner any action or other proceeding of any kind against any of the Released Parties or against the property of any Released Party with 5espect to any such Claim, demand, cause of action, or Interest, based upon, relating to, arising out of, or in any way connected with any Released Claim, any Asbestos Personal

4

       Injury Claim or any Demand;

  ii enforcing, attaching, collecting, or recovering, by any manner or means any judgment, award, decree or order against any of the Released Parties or against the property of any Released Party with respect to such Claim, demand, cause of action, or interest based upon, relating to, arising out of, or in any way connected with any Released Claim, any Asbestos Personal Injury Claim or any Demand; ...

  "Released Party" is defined in the Glossary, to include "Released Non-Debtor Parties . . . ." In turn, "Released Non-Debtor Parties" is defined to include "the Granite State Released Parties," and "Granite State Released Parties" is defined as "those parties released under the Granite State Asbestos Coverage Settlement."[4] The Granite State Asbestos Coverage Settlement, which is incorporated into and made part of the Plan, provides:

> **"Granite State" means Granite State Insurance Company, on behalf of itself and**, for purposes of the Release, all of its predecessors, successors, assigns, and their past, present and future affiliates, **parents, holding companies**, merged and/or acquired companies, subsidiaries, divisions and/or companies or corporations owned, controlled or under their common ownership or control, and each of their respective officers, directors, principals, shareholders, employees, attorneys, accountants' consultants, representatives and agents in their capacity as such. (emphasis added).

Paragraph 1.10 of Granite State Asbestos Coverage Settlement.

  AIG, Inc. is thus a "Released Party" pursuant to the terms of the Granite State Asbestos Coverage Settlement and the Glossary because it is the ultimate parent of Granite State and a holding company.

  "Released Claims" means "any and all claims against the Released Parties,

---

[4] The Granite State Asbestos Coverage Settlement is defined in section 1.80 of the Glossary as the settlement set out in the Granite State Asbestos Coverage Settlement Agreement.

5

including without limitation, the Asbestos Personal Injury Claims ..." Glossary, 1.108. In turn, Asbestos Personal Injury Claim is defined in Paragraph 1.17 of the Glossary:

> **"Asbestos Personal Injury Claim"** means (a) any claim, or remedy, liability or demand whenever and wherever arising or asserted against the Debtor, its predecessors, successors, subsidiaries or Affiliates, or its present or former officers, directors or employees and (b) any debt, obligation or liability, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, bonded, secured, or unsecured, whenever and wherever arising or asserted, of the Debtor, its predecessors, successors, subsidiaries or Affiliates, or its present or former officers, directors or employees, including, but not limited to, all thereof in the nature of or sounding in tort, contract, warranty, or any other theory of law, equity or admiralty, whether or not the facts of or legal basis therefore are known or unknown, under any theory of law; in either case (a) or (b) for, relating to, or arising by reason of, directly or indirectly, death, physical, emotional, bodily or other personal injury or damages (including, but not limited to, any claim or demand for compensatory damages, loss of consortium, proximate, consequential, general, special or punitive damages, reimbursement, indemnity, warranty, contribution or subrogation) whether or not diagnosable or manifested before the Effective Date of the Plan, (x) caused or allegedly caused, in whole or in part, directly or indirectly by asbestos or asbestos-containing products manufactured, sold, supplied, produced, distributed, released, advertised, or marketed by ARTRA or any of the Released ARTRA Parties, including, but not limited to, The Synkoloid Company, or (y) caused or allegedly caused by asbestos for which ARTRA or any of the Released ARTRA Parties is otherwise liable under any applicable law, whether or not arising or allegedly arising, directly or indirectly, from acts or omissions of the Debtor, its predecessors, subsidiaries of Affiliates, or its present or former officers, directors or employees, or any other Entity for or with which the Debtor or its successors are or may be liable, including, but not limited to, any claim, remedy, liability or demand for compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, and any claim, remedy, liability or demand

> for reimbursement, subrogation and contribution and any claim under any settlement entered into by or on behalf of ARTRA prior to the Petition Date relating to an Asbestos Personal Injury Claim…

**B.     The Texas Proceedings**

On April 27, 2006, before the Injunction issued, Defendants commenced the Texas Proceeding by filing Plaintiff's Original Petition (the "Texas Complaint"). The Texas Complaint alleges:

> **Plaintiff suffers from asbestosis** and in 1999 he filed suit for his injuries [the "First Texas Proceeding"]. In 2002, his case went to trial in the 94th District Court and a jury returned a substantial verdict in his favor on February 22, 2002. The Court thereafter entered Final Judgment on March 22, 2002 against The Synkoloid Company a/k/a Synkoloid, a Division of Muralo, Inc. in the amount of $2,025,000. A true and correct copy of the Court's judgment is attached hereto as Exhibit A.

> 6.     On May 9, 2002, Plaintiff entered into a written agreement which resolved the Final Judgment for a total of $725,000. This contract, hereinafter "the Settlement Agreement" . . . is the subject matter of this suit.

> 7.     The Settlement Agreement has four parties: (a) the Plaintiff; (b) ARTRA Group, presently bankrupt, as entity responsible for the asbestos liabilities of Synkoloid, the defendant against which judgment was entered; (c) Kemper Insurance Company, which insured the asbestos liabilities of ARTRA and Synkoloid; and (d) **Defendant AIG, which is the ultimate parent corporation of at least one insurance company [Granite State] which insured the asbestos liabilities of ARTRA and Synkoloid**. (emphases added).

**C.     The Granite State Proceedings**

Pursuant to a Settlement Agreement with this Debtor, approved by this Court on April 20, 2006, AIG, Inc.'s subsidiary Granite State agreed to pay more than $58,000,000 in insurance proceeds to an asbestos trust for the benefit of ARTRA's

7

present and future asbestos claimants, including Mr. Pace. In exchange for this commitment, Granite State and its related entities, including AIG, Inc., became entitled to the benefit of the Section 524(g) Channeling Injunction once it was issued.

**D.    The Instant Action To Enforce The Channeling Injunction**

This action was commenced on April 6, 2007 in the District Court shortly after the Confirmation Order became a final, non-appealable order. AIG, Inc. commenced the action to enforce the Channeling Injunction and permanently enjoin Defendants from continuing with the Texas Action. Defendants moved in the District Court to dismiss this action on the grounds that the action should have been commenced in the Bankruptcy Court. On June 14, 2007, this Court referred the matter to the Bankruptcy Court. On November 27, 2007, the Bankruptcy Court granted AIG, Inc. summary judgment, and issued a Final Judgment of Injunction enforcing the pre-existing 524(g) Channeling Injunction, by "permanently restrain[ing] and enjoin[ing Defendants] from asserting any further proceedings" in the Texas Action. Final Judgment of Injunction at 13. Defendants' appeal to this Court followed.

## ARGUMENT

**I.    THE BANKRUPTCY COURT HAS THE AUTHORITY
       TO ISSUE THE CHANNELING INJUNCTION**

Defendants initially assert that the Bankruptcy Court lacked the jurisdiction to issue and enforce the Channeling Injunction because a bankruptcy court's jurisdiction is limited to proceedings that affect the debtor. Moving Br. at 7-11. In advancing this contention, Defendants deliberately ignore that the instant Injunction was "issued by this Court and confirmed by the District Court pursuant to 11 U.S.C. 524(g) (Section 524(g) of the Bankruptcy Code)." Final Judgment of Injunction at 11.[5] Indeed, the

---

[5] By failing to mention, much less discuss, Section 524(g) in their moving papers, Defendants likely seek to deprive AIG, Inc. of a meaningful opportunity to respond to such arguments. As discussed in Point III below, the Court should offset this improper tactic, by precluding any 524(g) arguments raised by Defendants on reply, or, in the alternative, by permitting AIG, Inc. to file a sur-reply brief.

single most extraordinary page in Defendants' brief is its Table of Authorities, which fails to list § 524(g) among its contents. Defendants purport to challenge a 524(g) injunction, without mentioning or discussing before this Court that very section of the Code. The likely reason: § 524(g) of the Code readily resolves Defendants' jurisdictional argument.

First, Section 524(g) uniquely (and more broadly then the remainder of the Bankruptcy Code) provides that entities other than a debtor may have their obligations for asbestos-related debts derived from the debtor eliminated.[6] There is no requirement in the statute or the injunction itself that property of the debtor or the debtors' estate be involved. Under 524(g), parties such as AIG, Inc. are now entitled to the protection of their own interests and their own property through the mechanism of a channeling injunction. See Official Committee of Unsecured Creditors of Artra Group, Inc. v. Artra Group, Inc. (In re Artra Group, Inc.), 300 B.R. 699, 703-704 (Bankr. N.D. Ill. 2003) ("§ 524(g) authorizes permanent channeling injunctions against non-debtors in asbestos cases if certain requirements are met"). This unique provision also renders the handful of non-Section 524(g) cases cited by Defendants entirely inapposite,[7] and the presentation of the instant appeal, without any reference to § 524(g), extraordinary, if not frivolous.

---

[6] As noted above, until 1994, section 524(e) of the Bankruptcy Code provided, without relevant exception, that "discharge of the debt of the debtor does not affect the liability of any other entity." Congress, however, amended the Code in 1994 to add Section 524(g), precisely to broaden the Code's reach by authorizing channeling injunctions to protect non-debtors in asbestos cases.

[7] See Zerand Bernal Group, Inc. v. Cox, 23 F.3d 159 (7th Cir. 1994) (not asbestos-related 524(g) case) (Moving Br. at 9-10); Pacor, Inc. v. Higgins, 743 F.2d 984 (7th Cir. 1984) (case predates 1994 addition of Section 524(g) to Bankruptcy Code) (Moving Br. at 8); In re FedPak Sys., Inc., 80 F.3d 207 (7th Cir. 1996) (not an asbestos-related 524(g) case) (Moving Br. at 8); Cytomedix, Inc. v. Perfusion Partners & Assoc., 243 F.Supp.2d 786 (N.D. Ill. 2003) (not asbestos-related 524(g) case) (Moving Br. at 8); In re Commercial Loan Corp., 363 B.R. 559, 565 (N.D. Ill. 2007) (not asbestos-related 524(g) case) (Moving Br. at 8); Celotex Corp. v. Edwards, 514 U.S. 300 (1995) (not 524(g) case; injunction issued only under Bankruptcy Code § 105) (Moving Br. at 7).

Second, Section 524(g)(3)(A)(i) provides that, once the time to appeal a 524(g) injunction has lapsed, the injunction "shall be valid and enforceable and may not be revoked or modified." Here, Defendants' time to appeal has run, and, as a result, the Injunction must be enforced according to its plain terms.

Third, Defendants' argument regarding the Bankruptcy Court's purported lack of jurisdiction completely disregards that the Injunction and Plan being enforced was expressly confirmed by United States District Court Order. Specifically, although the Injunction was issued as part of a Plan initially approved by the Bankruptcy Court, the Plan and Injunction were confirmed by the United States District Court pursuant to a mandate of Congress that the District Court confirm such orders. See 11 U.S.C. § 524(g)(1)(A). The District Court plainly has the jurisdiction to issue the Injunction, and Defendants do not contend otherwise.

Finally, Defendants never argued to the Bankruptcy Court below that it lacked the authority to issue the Injunction. Accordingly, Defendants are estopped from contending that the Bankruptcy Court lacked the authority to approve such a Plan, and that the District Court lacked the authority to confirm such a Plan. See, e.g., King v. Ill. State Bd. of Elections, 410 F.3d 404, 424 (7th Cir. 2005) (arguments raised for the first time on appeal are waived); Weigel v. Target Stores, 122 F.3d 461, 464 (7th Cir. 1997) ("Issues not raised below are waived on appeal.").

## II. BY ITS PLAIN TERMS, THE CHANNELING INJUNCTION APPLIES TO THE TEXAS ACTION

There can be no real dispute that AIG, Inc. is a "Released Party." Nor can there be any real dispute that Mr. Pace's claim against AIG, Inc. in the Texas Action is "based upon," "related to" or at the very least "connected with" a Released Claim, which is defined to include his Asbestos Personal Injury Claim against ARTRA and Synkoloid. See Statement of Facts, supra. As the Bankruptcy Court correctly observed:

> The plain language of the 524(g) injunction and the incorporated documents including the settlement that Granite State entered into with Artra and the various definitions that I worked through diligently over and over

are clear that AIG is protected by the 524(g) injunction.

11/27/07 Tr. at 6:4-9 (annexed and incorporated into the Final Judgment of Injunction).

Defendants contend that Mr. Pace's claim against AIG, Inc. is "separate and unrelated to" his asbestos claim against Synkoloid because it is a contractual obligation. Def. Br. at 12-13. Defendants' contention is untenable. The contract at issue was a settlement agreement settling Mr. Pace's asbestos action, and quantifying the amount of his asbestos injuries and who would be responsible for paying Mr. Pace for those asbestos injuries. The definition of Asbestos Personal Injury Claim in the Plan is written broadly to include any claim in "contract" "relating to, or arising by reason of, directly or indirectly" to an asbestos claim. See Glossary, Paragraph 1.17. The settlement agreement readily meets that broad provision.

Equally untenable is Defendants' contention that AIG, Inc. is not a "Released Party" under the Plan documents. Def. Br. at 14. Defendants expressly concede that "the glossary to the plan documents defines 'released parties' to include 'those parties released under the Granite State Asbestos Coverage Settlement,' which includes AIG," but assert that the Granite State Settlement only releases Granite State's (and AIG, Inc.'s) insurance coverage obligation to ARTA. Id. Defendants are wrong; the Granite State Settlement is not so limited. The Granite State Settlement releases claims that might have been asserted by any person against Granite State (and AIG, Inc.) based upon, arising out of, or relating to any Asbestos Claims made against any one or more of the Policies. Demonstrably, Mr. Pace's current claim arises out of, and is related to, his prior asbestos claim made against Synkoloid and the Policies. Accordingly, Defendants' contention that AIG, Inc. is not a Released Party is meritless.

As the Bankruptcy Court stated:

> Mr. Pace did not object to this Injunction at the time that the Plan was confirmed, given his contractual claim against AIG. . . . Mr. Pace voted for the plan and voted for the injunction and I am now enforcing it.

11/27/07 Tr. at 8:8-16. In other words, Defendants had a chance to accept or reject the Plan and the Channeling Injunction that is an integral part of that Plan. Having voted to

11

accept the benefits of the Plan, Defendants are bound by the Plan's Injunction.

### III. THE COURT SHOULD PRECLUDE DEFENDANTS FROM RAISING ANY 524(G) ARGUMENTS IN THEIR REPLY, OR, IN THE ALTERNATIVE, PERMIT AIG, INC. TO FILE A SUR-REPLY BRIEF IN RESPONSE

Defendants' failure to mention § 524(g) in their moving brief could not have been an oversight. The Final Judgment being appealed mentions § 524(g) almost a dozen times, and the only genuine issue in this appeal is whether an injunction, specifically issued by the Bankruptcy Court under § 524(g), has been violated. Accordingly, Defendants' failure even to mention 524(g) in its moving papers can only be deliberate. By withholding all arguments regarding § 524(g) until reply (if they have any such arguments), Defendants apparently seek unfairly to prevent AIG, Inc. from offering a response. The Court should not countenance such improper tactics. Instead, the Court should follow well-settled law and strike any 524(g) arguments Defendants may attempt to raise on reply. In the alternative, the Court should permit AIG, Inc. to address by sur-reply any 524(g) arguments raised on reply.

Except for a passing, indirect reference to a "channeling injunction" prohibiting claims against "Released Parties" buried on page fourteen of their brief, Defendants simply bypass the existence of § 524(g) of the Code. This failure to mention, much less discuss, § 524(g) is extraordinary. In the Final Judgment of Injunction that is being appealed by Defendants, the Bankruptcy Court specifically stated

> The Injunction is an injunction issued by this Court and confirmed by the District Court pursuant to 11 U.S.C. 524(g) (Section 524(g) of the Bankruptcy Code). The Confirmation Order includes Findings of Fact and Conclusions of Law that all requirements of paragraph 2(B) of Section 524(g) of the Bankruptcy Code were met and satisfied when the Injunction was issued.

Final Judgment of Injunction, at 11 (Conclusion of Law CC). And, 524(g) was added to the Bankruptcy Code by Congress in 1994 precisely to broaden the Code's reach by authorizing channeling injunctions – like the Injunction at issue here – that protect non-debtors in asbestos cases. See 11 U.S.C. § 524(g). Given this, for Defendants to argue

that the Bankruptcy Court lacked the jurisdiction to issue a channeling injunction without referencing § 524(g) could not have been an oversight, but a studied attempt to withhold argument regarding 524(g) until reply. Defendants should not profit by their calculated attempt to conduct this appeal by ambush.

"All arguments for reversal must appear in the opening brief, so that the appellee may address them. [Courts] have consistently refused to consider arguments withheld until the reply brief." Wilson v. O'Leary, 895 F.2d 378, 384 (7th Cir. 1990) (citing FTC v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1025-26 (7th Cir. 1988).[8] Arguments not raised in the opening brief are waived, irrespective of their importance to the issues on appeal. See, e.g., Help at Home, Inc. v. Medical Capital, LLC, 260 F.3d 748, 753 n.2 (7th Cir. 2001) (granting motion to strike argument from reply brief; "More fundamentally, HAH first raised this argument in its reply brief on appeal, and ... [w]e agree that HAH, by not making this argument in its opening brief, has waived the issue."); Wilson, 895 F.2d at 384; Kraft-Egert v. Connecticut General Life Ins. Co., 900 F.2d 1032, 1035 (7th Cir. 1990).

In Wilson, the State of Illinois appealed a District Court decision holding that a confession was inadmissible for failure to provide *Miranda* warnings, requiring a new trial. 895 F.2d at 384. The Magistrate Judge who originally ruled on the issue held that the admission of the involuntary confession at trial constituted harmless error, because it mirrored a voluntary confession that was properly admitted. The district court, however, disagreed, and reversed Wilson's conviction. Id. On appeal by the State of Illinois, the Seventh Circuit recognized that the "state's best chance was to persuade us that Magistrate Bucklo is correct [that the error was harmless]," but held that, for some

---

[8] See also Duggan v. Board of Education, 818 F.2d 1291, 1293 (7th Cir. 1987); In re Bear, 789 F.2d 577, 579-580 (7th Cir. 1986); United States v. Goodwin, 770 F.2d 631, 640 n. 4 (7th Cir. 1985); Beerly v. Department of the Treasury, 768 F.2d 942, 949 (7th Cir. 1985); Myron v. Chicoine, 678 F.2d 727, 732 n. 8 (7th Cir. 1982); Bugg v. Industrial Workers Local 507, 674 F.2d 595, 598 n. 4 (7th Cir. 1982); Wood v. Worachek, 618 F.2 1225, 1228 n. 1 (7th Cir. 1980); United States v. Michigan Carton Co., 552 F.2d 198, 201 (7th Cir. 1977); Finsky v. Union Carbide Corp., 249 F.2d 449, 459 (7th Cir. 1957)).

"inexplicable" reason, "Illinois has forfeited what would have been its best argument" because "the state did not mention harmless error in its opening brief." Id. Notably, the harmless error argument was waived despite its importance and likely success on appeal, and the harmful ramifications and prejudice that would result from the waiver. See id. ("Illinois has forfeited its best argument. If as a result a violent offender goes free, the Attorney General of Illinois must understand where the responsibility lies – with his own staff.").

Similarly, in Kraft-Egert v. Connecticut General Life Ins. Co., 900 F.2d 1032 (7th Cir. 1990), plaintiff Christine Kraft-Egert challenged her insurance carrier's refusal to pay for her in vitro fertilization ("IVF") treatments. Id. at 1032-1035. The district court held that Connecticut General's did not act arbitrarily and capriciously in interpreting Kraft-Egert's insurance plan to deny coverage for IVF treatments, and found for Connecticut General. Id. at 1035. On appeal, Kraft-Egert generally argued in her moving papers that the district court had erred, and that the denial of her claim had been arbitrary and capricious. Id. However, Kraft-Egert waived an important supporting argument by not raising it until reply:

> Kraft-Egert argues in her reply brief that, in determining whether Connecticut General's denial of her claim was arbitrary and capricious, we should consider the potential conflict of interest faced by Connecticut General. This is not a frivolous concern; indeed, the Supreme Court recognized in *Firestone Tire* that a conflict of interest "must be weighed as a 'factor[] in determining whether there is an abuse of discretion.' *Restatement (Second) of Trusts*, § 187, comment d (1959)." *Firestone Tire*, 109 S. Ct. at 956-57. ... But Kraft-Egert did not express this concern until it was too late. Although she recited in her preliminary brief the Supreme Court's language about conflicts of interest, she did not allege until her reply brief that Connecticut General suffered such a conflict. ... Thus, Kraft-Egert has waived its argument by failing to give Connecticut General a meaningful opportunity to respond in its brief.

Kraft-Egert, 900 F.2d at 1035.

Plainly, any genuine attack on the Bankruptcy Court's jurisdiction and authority

in this case will require a novel attack on § 524(g). AIG, Inc. can only conclude that Defendants avoided mentioning or discussing § 524(g) in their moving papers to deprive AIG, Inc. of a meaningful opportunity to respond to such novel arguments, if such arguments exist. Whatever the motive, the consequences of Defendants' action are clear: Defendants have waived their chance to make any 524(g) arguments on this appeal. Wilson, supra; Kraft-Egert, supra; Help at Home, supra. In the alternative, AIG, Inc. should be permitted to file a sur-reply, so that it may respond to any 524(g) arguments made by Defendants in their reply papers.

## CONCLUSION

The Bankruptcy Court's Order enforcing the Injunction was correct, and its Final Judgment of Injunction should be affirmed in its entirety. In addition, the Court should strike, as waived, any arguments regarding § 524(g) Defendants may raise in their reply papers, or, in the alternative, permit AIG, Inc. to file a sur-reply brief.

Dated: June 2, 2008

Respectfully submitted,

*/s/ Colleen A. Brown*
Colleen A. Brown
Clausen Miller P.C.

Michael S. Davis *(Bar I.D. No. 1226851)*
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400 (telephone)
(212) 753-0396 (fax)

Margaret J. Orbon *(Bar I.D. No. 2114925)*
Colleen Brown *(Bar I.D. No. 6269463)*
John F. O'Brien III *(Bar I.D. No. 6290370)*
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
(312) 855-1010 (telephone)
(312) 606-7777 (fax)

James V. Hoeffner *(Bar I.D. No. 09772700)*
THOMPSON COE COUSINS & IRONS, LLP
701 Brazos, Suite 1500
Austin, Texas 78701
(512) 703-5070 (direct)
(512) 708-8777 (fax)
(Admitted to the U.S.D.C. for the N. Dist. of Ill.)

Guy N. Webster *(Bar I.D. No. 140427)*
LYNBERG & WATKINS
888 S. Figueroa Street, 16th Floor
Los Angeles, California 90017-2516
(213) 624-8700 (telephone)
(213) 892-2763 (fax)
(Admitted to the U.S.D.C. for the N. Dist. of Ill.)

ATTORNEYS FOR AMERICAN INTERNATIONAL GROUP, INC