

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

JUN 1 3 2008  **NB**

Jun 13. 2008

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

| | |
|---|---|
| JOHN HENRY PACE and <br> BARON & BUDD, P.C. <br><br>      *Appellants,* <br><br> vs. <br><br> AMERICAN INTERNATIONAL <br> GROUP, INC. <br><br>      *Appellee.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

CASE NO. 08-C-945

The Honorable David H. Coar

---

On appeal from the United States Bankruptcy Court
for the Northern District of Illinois, Eastern Division
Case No. 02B 21522
Adversary Proceeding No. 06-1329

---

## REPLY BRIEF OF APPELLANTS

---

Brent M. Rosenthal, Esq.
(*pro hac vice*)
Texas State Bar No. 17281075
BARON & BUDD P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, Texas 75219
Telephone No.: 214-521-3605
Facsimile No.: 214-520-1181
*Lead Counsel for Appellants*

Marc Chalfen, Esq.
ARDC No. 00422584
David Adduce, Esq.
ARDC No. 6203603
James Stephenson, Esq.
ARDC No. 6287477
KELLY, OLSON, MICHOD,
    DEHAAN & RICHTER, L.L.C.
30 S. Wacker Drive, #2300
Chicago, Ill. 60606
Telephone No.: 312-236-6700
Facsimile No.: 312-236-6706
*Local Counsel for Appellants*

## ORAL ARGUMENT REQUESTED

June 12, 2008

## TABLE OF CONTENTS

                                                                                     **Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      I.       NEITHER THE CHANNELING INJUNCTION NOR ANY OTHER ORDER,
             AGREEMENT, OR PROVISION IN THE ARTRA BANKRUPTCY PROHIBITS THE
             PROSECUTION OF PACE'S CONTRACT CLAIM AGAINST AIG IN TEXAS.. . . . . . . . . 1

      II.     THE CHANNELING INJUNCTION, IF INTERPRETED TO PROTECT AIG FROM
             CONTRACT CLAIMS THAT ARE SEPARATE, INDEPENDENT, AND NON-
             DERIVATIVE OF PERSONAL INJURY CLAIMS, DOES INDEED EXCEED THE
             BANKRUPTCY COURT'S JURISDICTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CONCLUSION AND PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Celotex Corp. v. Edwards,*
514 U.S. 300 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Combustion Engineering, Inc.,*
391 F.3d 190 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*In re Congoleum Corp.,*
362 B.R. 167 (Bankr. D.N.J. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Copelin v. Spirico, Inc.,*
182 F.3d 174 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Insurance Corp. of Ireland, Ltd. v. Campagnie des Bauxites de Guinee,*
456 U.S. 694 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Johns-Manville Corp.,* 68 B.R. 618 (Bankr. S.D.N.Y. 1986),
*aff'd sub nom. Kane v. Johns-Manville Corp.,* 843 F.2d 636 (2d Cir. 1988) . . . . . . . . . . . . . . 4

*In re Kmart Corp.,*
359 B.R. 189 (Bankr. N.D. Ill. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Midway Airlines, Inc.,*
383 F.3d 663 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re National Gypsum Co. (The New National Gypsum Co. v.*
*The National Gypsum Co. Settlement Trust),*
219 F.3d 478 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Statutes**

11 U.S.C. §524(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

11 U.S.C. § 524(g)(4)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

28 U.S.C. § 1334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6



**TABLE OF AUTHORITIES**, *Continued*                                                  **Page(s)**

**Other Authorities**

Deborah R. Hensler, *Bringing Shutts into the Future:*
*Rethinking Protection of Future Claimants in Mass Tort Class Actions,*
74 U.M.K.C.L. REV. 585 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

H.R. Rep. 103-835 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340 . . . . . . . . . . . . . . . . . . . . 4, 5

James L. Stengel, *The Asbestos End-Game,*
62 N.Y.U. ANN. SURV. AM. L. 223 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## INTRODUCTION

AIG's apparent strategy in response to Pace's appeal is to set up, and then knock down, a straw man. According to AIG, Pace's appeal broadly challenges the bankruptcy court's "authority to issue the channeling injunction" under section 524(g) of the Bankruptcy Code. AIG Br. 8. This challenge, AIG warns, threatens not only the payments made in the ARTRA bankruptcy plan, but also the billions of dollars paid in other asbestos-related bankruptcies in which section 524(g) injunctions were issued. *Id.* Pace and his counsel had every opportunity to object to the channeling injunction and the bankruptcy court's jurisdiction to enter it, AIG reminds us; their failure to do so effectively waives their objection to the bankruptcy court's jurisdiction to enter the specific injunction that is the subject of *this* appeal.

But in his original brief, Pace did not contest the ability of the bankruptcy court to issue the channeling injunction in the ARTRA bankruptcy–unless it is given the tortured interpretation ascribed to it by AIG and the bankruptcy court. Rather, Pace challenged the ability of the bankruptcy court to enjoin the prosecution of his separate, independent contract claim against AIG. To the extent that the channeling injunction purports to enjoin the contract claim, the court did not have jurisdiction to enter it. But the Court need not reach that issue, because, as Pace pointed out in his initial brief, the channeling injunction simply did not provide that protection to AIG.

## ARGUMENT

I. **Neither the Channeling Injunction Nor Any Other Order, Agreement, or Provision in the ARTRA Bankruptcy Prohibits the Prosecution of Pace's Contract Claim Against AIG in Texas.**

As Pace explained in his initial brief, nothing in the bankruptcy plan documents provides that AIG is protected from the type of contract claim that Pace has asserted in Texas. Of course, none of the relevant documents cites AIG by name, but even the indirect references to AIG–as a "parent" and "holding company" of Granite State Insurance Company in the Granite State settlement and as a party "released under the Granite State Asbestos Coverage Settlement" in the channeling injunction–do not absolve AIG of all liability however incurred. The Granite State Asbestos Coverage Settlement only releases claims made on the insurance policies issued by Granite State to ARTRA. But Pace's contract claim against AIG is not based on any insurance policy–rather, it is

1



based on AIG's express, stand-alone contract to pay Pace a specific sum on or before a specific date.[1] And the channeling order considers AIG and other nonparties to the bankruptcy to be "Released Parties" "only to the extent provided for" in the Granite State Asbestos Coverage Settlement. Doc. No. 9, Exhibit C (Second Amended Glossary of Terms for Plan Documents) at 10, ¶ 1.82. Thus, the bankruptcy plan documents, even with their multiple "incorporations by reference" of provisions covering AIG, do not protect AIG from answering Pace's Texas contract claim.

Nor, for reasons also explained in Pace's initial brief, is Pace's contract claim against AIG "based upon," "related to," or "connected with" his asbestos personal injury claim against Synkoloid/ARTRA. It is, of course, "related to" and "connected with" the claim against Synkoloid in the historical sense, but as used in statutes and contracts those terms require more than a historical relationship. The obligations of AIG and Synkoloid are set forth separately in the contract, and the contract expressly provides that the enforcement (or not) of one obligation will have no effect on the other. And Pace's claim against AIG required no proof supporting the prior claim against Synkoloid; he merely had to show that AIG made the promise to pay and did not keep it. The bankruptcy court's conclusion that Pace's contract claim is "related to" or "connected with" the prior personal injury claim conflicts with the plain language and obvious intent of the agreement, and should not be followed by this Court.

Nevertheless, AIG argues in its brief that there can be "no real dispute" that AIG, Inc. is a "Released Party" or that Pace's claim against AIG in Texas is "based upon," "related to," or "connected with" a "Released Claim" as those terms are defined in the bankruptcy plan. AIG Br. 10. Rather than examine the actual language of the pertinent bankruptcy documents, however, AIG cites

---

[1] In the Texas litigation, AIG argued that its agreement to pay Pace is unenforceable under Texas substantive law because (1) AIG had no liability, derivative or otherwise, to Pace; (2) its promise to pay was thus gratuitous; and (3) the contract is therefore unsupported by consideration from Pace. *See, e.g.*, Doc. No. 9 (AIG's Motion for Summary Judgment), Exhibit K (transcript of oral argument on Pace's motion for summary judgment in the Texas contract case), at 12 (the "evidence does not show that there was any consideration as to AIG"); Doc. No. 31 (AIG's Reply in Support of Its Motion for Summary Judgment), at 10 (quoting its "no consideration" defense in the Texas court). The argument conclusively undermines AIG's assertion here that Pace's contract claim seeks insurance proceeds and are therefore foreclosed by the Granite State Asbestos Coverage Settlement and the channeling injunction. Of course, Pace argued in the Texas proceeding that under the applicable Texas substantive law of contracts, AIG's promise to pay is valid and enforceable. In any event, this issue of Texas substantive law has nothing to do with ARTRA's bankruptcy and should be decided by the Texas courts, not by the bankruptcy court.

as the sole support for its interpretation the bankruptcy judge's conclusory observations that "the plain language of the 524(g) injunction and the incorporated documents . . . and the various definitions that I worked through diligently over and over are clear that AIG is protected by the 524(g) injunction." AIG Br. 10-11, quoting 11/27/07 Tr. at 6:4-9.

But the bankruptcy court's determination that the contract claim is "based upon," "related to," or "connected with" a prior claim released in bankruptcy is a conclusion of law subject to de novo review. Doc. No. 45 (Final Judgment of Injunction Including Findings of Fact and Conclusions of Law) at 11-12 (reciting as "Conclusions of Law" that "Plaintiff AIG, Inc. is a 'Released Party' within the meaning of the Injunction" and that "Defendant Pace's claim against AIG, Inc. is 'based upon,' 'related to,' and 'connected with' a Released Claim which is defined by the injunction to include his Asbestos Personal Injury Claim against ARTRA and Synkoloid."); *In re Midway Airlines, Inc.* 383 F.3d 663, 668 (7th Cir. 2004) (bankruptcy court's "conclusions of law are reviewed de novo."). The bankruptcy court's opinions on this matter are not entitled to any deference on appeal; instead, the court should only consider the plain language and obvious intent of the documents. This is true even though the bankruptcy court itself presided over the creation of the very documents it has been called upon to interpret. *See, e.g., In re National Gypsum Co. (The New National Gypsum Co. v. The National Gypsum Co. Settlement Trust)*, 219 F.3d 478 (5th Cir. 2000) (bankruptcy court interpreted plan documents to impose liability on transferee company for unsatisfied asbestos claims; court of appeals reversed, holding that bankruptcy court erred in interpreting the plan documents).

Pace's understanding of the meaning of the channeling injunction is also consistent with 11 U.S.C. §524(g), upon which AIG so heavily relies.[2] It is true, as AIG points out, that Congress enacted section 524(g) to make clear that bankruptcy courts could, as part of a plan of reorganization of a debtor with asbestos liability, enjoin creditor actions against a third party who contributes to the

---

[2] Pace and his counsel deny that their "failure" to cite section 524(g) in their initial brief is "extraordinary" or indicates a "deliberate" attempt to prevent AIG from advancing its best arguments. AIG Br. 12. The absence of a citation to section 524(g) in Pace's initial brief merely reflects the belief that the statute provides no conceivable basis for enjoining Pace's non-derivative claim against non-debtor AIG. Pace has no objection to AIG's request to file a surreply brief countering Pace's arguments concerning section 524(g).

3

compensation trust created by the plan.[3]  But while section 524(g) authorizes the issuance of channeling injunctions to protect third parties under certain circumstances, it does not authorize a bankruptcy court to immunize a third party from *all* liability to a bankruptcy creditor.  Section 524(g)(4)(A)(ii) provides that a channeling injunction may bar actions against third parties only to the extent such alleged liability arises by reason of–

> (I) the third party's ownership of a financial interest in the debtor . . .
> (II) the third party's involvement in the management of the debtor . . .
> (III) the third party's provision of insurance to the debtor or a related party; or
> (IV) the third party's involvement in a transaction changing the corporate structure . . . .

11 U.S.C. § 524(g)(4)(A)(ii).

AIG's liability to Pace is predicated on none of the acts or relationships described in section 524(g)(4)(A)(ii).  Although it is true that AIG's subsidiary provided insurance to ARTRA (subsection III), AIG's liability to Pace is not based on the provision of insurance but on AIG's separate, specific and unequivocal written contractual agreement to pay Pace a liquidated sum by a particular date.  Section 524(g) clearly does not authorize a bankruptcy court to protect a third party from this type of independent claim.  *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 234-36 (3d Cir. 2004) (noting that the bankruptcy court correctly refused to enter a channeling injunction under § 524(g)(4)(A)(ii) in favor of two non-debtors because the alleged liability was not derivative of that of the debtor and fit none of the categories specified in the statute).  And because, as is shown above, the channeling injunction does not by its terms enjoin prosecution of such claims, it is hardly

---

[3] It is inaccurate to suggest as AIG does that section 524(g) significantly "broadens the Code's reach."  AIG Br. 9 & n.6.  The bankruptcy court presiding over the Johns-Manville bankruptcy issued a channeling injunction barring actions against third parties years before enactment of section 524(g). *In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).  In enacting the statute, Congress sought merely to codify the approach of the Johns-Manville court and to specify the circumstances under which issuance of a channeling injunctions would be appropriate. *See* H.R. Rep. 103-835, at 41 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3349 ("The Committee has concluded . . . that creating greater certitude regarding the validity of the trust/injunction mechanism must be accompanied by explicit requirements simulating those met in the Manville case.").

surprising that Pace did not object to the channeling injunction or the bankruptcy court's jurisdiction to issue it.

The channeling order and incorporated documents simply do not protect AIG against Pace's breach of contract claim in Texas. The bankruptcy court erred in concluding otherwise and in enjoining the Texas action.

## II. The Channeling Injunction, If Interpreted To Protect AIG from Contract Claims That Are Separate, Independent, and Non-Derivative of Personal Injury Claims, Does Indeed Exceed the Bankruptcy Court's Jurisdiction.

Ordinarily, a court's subject-matter jurisdiction is a threshold matter to be considered before any other issue. *In re Kmart Corp.*, 359 B.R. 189, 194 (Bankr. N.D. Ill. 2005); *Copelin v. Spirico, Inc.*, 182 F.3d 174, 179 (3d Cir. 1999). Accordingly, Pace addressed the jurisdiction of the bankruptcy court to enjoin prosecution of his Texas case at the beginning of his initial brief. Appellants' Br. 5-8. In this case, however, the narrower and more obvious basis for reversal is the bankruptcy court's legal error in interpreting the channeling injunction. Contrary to AIG's argument and the bankruptcy court's conclusion, the channeling injunction *does not* bar Pace from pursuing his contract action in Texas. Pace thus had no reason to object to the channeling injunction on jurisdictional or any other grounds, and his acquiescence in the Plan and channeling injunction does not prevent him from challenging the subsequent injunction aimed specifically at him.

If, however, this Court accepts the interpretation of the channeling injunction urged by AIG and adopted by the bankruptcy court, then that Court did indeed exceed its subject-matter jurisdiction by enjoining contract claims, having nothing to do with the debtor, against third parties. As Pace explained in his opening brief, bankruptcy courts "have no jurisdiction over proceedings that have no effect on the debtor." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995). Contrary to AIG's implication, section 524(g) did not expand the limited jurisdiction of courts presiding over asbestos bankruptcies. Rather, it was intended to ratify the Johns-Manville bankruptcy court's conclusion that the Bankruptcy Code allows the resolution of unmanifest "future claims." *See* H.R. Rep. 103-835, at 40 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3349 (section 524(g) "is modeled on the trust-injunction in the Johns-Manville case, which pioneered the approach a decade ago in response to the flood of asbestos lawsuits it was facing."); *see also* James L. Stengel, *The Asbestos End-Game*, 62 N.Y.U. ANN. SURV. AM. L. 223, 259 (2006) ("The raison d'etre of the § 524(g)

5

injunction is its application to future claims."); Deborah R. Hensler, *Bringing Shutts into the Future: Rethinking Protection of Future Claimants in Mass Tort Class Actions*, 74 U.M.K.C.L. REV. 585, 594 (section 524(g) "was intended to facilitate resolution of future asbestos claims through bankruptcy"). A claim must still be "related to" a bankruptcy, and have an effect on the debtor, to be within the jurisdiction of the bankruptcy court. *In re Congoleum Corp.*, 362 B.R. 167, 190-91 (Bankr. D.N.J. 2007) (noting that the *jurisdiction* to enter non-debtor releases and the statutory *authority* to do so are separate inquiries). Bankruptcy jurisdiction remains "defined by 28 U.S.C. § 1334" and must "exist independently of any plan provision purporting to involve or enjoin claims against non-debtors." *In re Combustion Engineering, Inc.*, 391 F.3d 190, 225 (3d Cir. 2004).

In any event, as is argued in this brief, section 524(g) does not authorize the bankruptcy court to enjoin claims against third parties that are based on theories of liability not described in the statute. *See* 11 U.S.C. § 524(g)(4)(A)(ii). Thus, even if section 524(g) broadened the jurisdiction of a bankruptcy court presiding over an asbestos bankruptcy, it did not provide the bankruptcy court with jurisdiction to enjoin the type of claim made by Pace in Texas.

AIG asserts that "Defendants never argued to the Bankruptcy Court below that it lacked the authority to issue the injunction." AIG Br. 10. But Pace did, of course, object to the bankruptcy court's jurisdiction to issue the specific injunction that is the subject of *this* appeal. *See* Doc. No. 18 (Response of Baron & Budd & John Henry Pace to AIG's Motion for Summary Judgment), at 2-8. If by its assertion AIG means that Pace did not object to the channeling injunction in the ARTRA bankruptcy AIG is correct, but the omission is both understandable and without legal consequence. As is stated above, the channeling injunction gives no hint that it applies to the type of non-derivative claims against AIG possessed by Pace. Pace therefore had no meaningful ability, or obligation, to object to the channeling injunction in the ARTRA bankruptcy in order to preserve his jurisdictional objection in this proceeding. *See Insurance Corp. of Ireland, Ltd. v. Campagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 ("A party *that has had the opportunity to litigate* the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack on an adverse judgment.") (emphasis added).

6



## CONCLUSION AND PRAYER FOR RELIEF

Neither the channeling injunction nor any other order in the ARTRA bankruptcy, either directly or by reference, prohibits Pace from asserting his non-derivative breach of contract claim against AIG in the Texas state courts. This is appropriate, because the bankruptcy court did not have subject-matter jurisdiction to enjoin such a claim, nor did it have the authority to do so under 11 U.S.C. 524(g). For these reasons and the reasons expressed in the Brief of Appellants and in this Reply Brief, the bankruptcy court's final judgment of injunction should be reversed, and judgment should be rendered against AIG and in favor of appellants/defendants Pace and Baron & Budd on AIG's adversary proceeding.

Respectfully Submitted,

BARON & BUDD, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, Texas 75219-4281
Tel. 214/521-3605; Fax.: 214/520,1181

BY: _____
BRENT M. ROSENTHAL (*pro hac vice*)
Texas State Bar No. 17281075
*Lead Counsel for Appellants*

- *and* -

Marc Chalfen, Esq.
ARDC No. 00422584
David Adduce, Esq.
ARDC No. 6203603
James Stephenson, Esq.
ARDC No. 6287477
KELLY, OLSON, MICHOD, DEHAAN
 & RICHTER, L.L.C.
30 S. Wacker Drive, #2300
Chicago, Ill. 60606
Telephone No.: 312-236-6700
Facsimile No.: 312-236-6706
*Local Counsel for Appellants*

7

## CERTIFICATE OF SERVICE

The undersigned, after being duly sworn, deposes and says that he served this **REPLY BRIEF OF APPELLANTS** via Federal Express, Next Business Day Delivery, to all known counsel of record at their respective addresses, as indicated on the attached Service List, on the 12th day of June, 2008.

BRENT M. ROSENTHAL

8

## SERVICE LIST

Honorable David H. Coar
UNITED STATES DISTRICT COURT
Northern District of Illinois - Eastern District
Courtroom 1419, Chambers 1478
219 South Dearborn St.
Chicago, IL 60604
Phone: 312/435-5648

Honorable Pamela S. Hollis
UNITED STATES BANKRUPTCY COURT
Northern District of Illinois
219 South Dearborn St., Rm. 648
Chicago, IL 60604
Phone: 312-435-5587

Michael S. Davis, Esq.
ZEICHNER ELLMAN & KRAUSE, LLP
575 Lexington Avenue
New York, NY 10022
Phone: 212-223-0400; Fax: 212-753-0396
-*Counsel for Plaintiff-Appellee*

Clausen Miller, Esq.
Colleen Brown, Esq.
John F. O'Brien III, Esq.
CLAUSEN MILLER, P.C.
10 South LaSalle Street
Chicago, IL 60603-1098
Phone: 312-855-1010
-*Counsel for Plaintiff-Appellee*

Marc Chalfen, Esq.
David Adduce, Esq.
James Stephenson, Esq.
KELLY, OLSON, MICHOD, DEHAAN
    & RICHTER, L.L.C.
30 S. Wacker Drive, #2300
Chicago, Ill. 60606
Telephone No.: 312-236-6700
Facsimile No.: 312-236-6706
-*Local Counsel for Defendants/Appellants*

9