# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN HERNY PACE and BARON & BUDD, P.C., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | No. 08 C 945 |
| v. | ) | |
| | ) | |
| AMERICAN INTERNATIONAL GROUP, INC., | ) | JUDGE DAVID H. COAR |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

Presently before this Court is the appeal of John Henry Pace and Baron & Budd, P.C. ("Pace" or "Appellants") from the Final Injunction and Order issued by the United States Bankruptcy Court, which granted summary judgment in favor of American International Group, Inc. ("AIG" or "Appellee"), denied summary judgment for Pace, and enjoined Pace's related suit against AIG in state court. This Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 158(a). For the reasons stated below, the Bankruptcy Court's decision is AFFIRMED.

## FACTUAL BACKGROUND

Setting the current dispute in motion, Pace initiated a lawsuit against AIG in Texas state court, alleging that AIG failed to pay Pace under the terms of a settlement agreement between the parties. The Texas trial court awarded summary judgment to Pace on October 26, 2006, and AIG timely appealed. Before the Texas court resolved this appeal, AIG filed an Original Complaint and Request for Injunctive Relief in this Court, alleging that Pace's state court suit was barred by a channeling injunction issued during bankruptcy proceedings for ARTRA Group, Inc. ("ARTRA"). The matter was referred to the Bankruptcy Court for the Northern District of

- 1 -

Illinois, which had presided over the ARTRA bankruptcy and issued the channeling injunction in question.  On November 27, 2007, the Bankruptcy Court entered a "Final Judgment of Injunction," granting summary judgment in favor of AIG, denying summary judgment for Pace, and enjoining the continuation of the Texas proceeding.  Pace's appeal from this decision is now before the Court.  Unless otherwise stated, the Court draws the following facts, which are not in dispute, from the Bankruptcy Court's Findings of Fact.

**I.     The Texas Action**

On April 27, 2006, Pace, through his attorneys Baron & Budd, P.C., filed suit against AIG in Texas state court.  *See Pace v. American International Group, Inc.*, No. 06-2150-A (the "Texas Action").  In that action, Pace alleged the following:

- He suffers from asbestosis and filed suit for his injuries in Texas state court in 1999.

- After the trial that ensued, a jury awarded a substantial verdict in Pace's favor, and, on March 22, 2002, the court entered a final judgment against the Synkoloid Company in the amount of $2,025,000.

- On May 9, 2002, Pace entered into a written agreement resolving the final judgment for a total of $725,000 (the "Pace Settlement Agreement").  This agreement had four parties: (1) Pace, (2) ARTRA (the entity responsible for the asbestos liabilities of Synkoloid and defendant against whom Pace's judgment was entered), (3) Kemper Insurance Company ("Kemper") (insurer for asbestos liabilities of ARTRA and Synkoloid), and (4) AIG (the ultimate parent corporation of at least one insurance company which insured the asbestos liabilities of ARTRA and Synkoloid).

- The Pace Settlement Agreement required that, on or before June 7, 2002, the parties make payments in the following amounts to Pace: (1) $432,970.00 by AIG, (2) $94,322.50 by Kemper, and (3) $197,707.50 by ARTRA.

- While Pace and Kemper performed all of their obligations under the Pace Settlement Agreement, both ARTRA and AIG failed to make their required payments.

In his brief before this Court, Pace adds that the Pace Settlement Agreement included the following language:

> The parties understand and agree that should ARTRA Group, Inc. fail to pay their portion of this settlement, Pace will not attempt to collect ARTRA Group, Inc.'s portion of this settlement directly from the insurers listed above in paragraph 2; provided, however, that nothing herein is intended to prevent or impede Pace from seeking to collect ARTRA Group, Inc.'s portion of the settlement from ARTRA Group itself, or from any other entity aside from the insurers listed in paragraph 2, regardless of from where the ultimate source of the funds for ARTRA Group, Inc.'s payment derives.

Pace also adds that, in compliance with the Pace Settlement Agreement, he executed a Full and Final Release of All Claims and Indemnity Agreement releasing ARTRA and its insurers for asbestos-related claims against Synkoloid.

**II.     The ARTRA Bankruptcy**

On June 3, 2002, four days before ARTRA was required to render payment to Pace under the terms of the parties' settlement agreement, ARTRA filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. On November 3, 2006, ARTRA and the Creditors' Committee in the ARTRA bankruptcy jointly filed a plan of reorganization (the "Plan"), which was modified on January 24, 2007. Baron & Budd served as a member of the Creditors' Committee, and Pace, who remained a creditor of ARTRA due to the amount owed to him under the 2002 Pace Settlement Agreement, voted for the Plan. On January 25, 2007, the Bankruptcy Court entered an "Order Confirming Amended Joint Reorganization Plan of ARTRA Group, Incorporated, As Modified" (the "Confirmation Order"). This Court confirmed the Bankruptcy Court's Order on February 16, 2007.

The Plan governing the ARTRA Bankruptcy created a trust to pay for all asbesetos-related personal injury claims against ARTRA (and therefore Synkoloid). To protect a debtor

(and certain non-debtors) who contribute to such a trust, § 524(g) of the Bankruptcy Code allows for the issuance of a "channeling injunction" that funnels all asbestos-related claims exclusively to that trust. The channeling injunction in this case, included in paragraph 12 of the Confirmation Order, provides in relevant part:

> In order to preserve and promote the settlements contemplated by and provided for in the Plan . . . all Entities which have held or asserted, which hold or assert, or which may in the future hold or assert any Claim, demand (including any Demand), or cause of action (including, but not limited to, an Asbestos Personal Injury Claim and any Released Claim, or any Claim or demand for or respecting any Asbestos Trust Expense of the Trust) against the Released Parties, or any of them, based upon, relating to, arising out of, or in any way connected with any Released Claim or any Asbestos Personal Injury Claim, whenever and wherever arising or asserted (including, but not limited to, all such claims in the nature of or sounding in tort, contract, warranty or any other theory of law, equity, or admiralty) or against any Interest shall be permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim, demand, cause of action, or Interest, including, but not limited to:
>
> i. commencing or continuing in any manner any action or other proceeding of any kind against any of the Released Parties or against the property of any Released Party with respect to any such Claim, demand, cause of action, or Interest, based upon, relating to, arising out of, or in any way connected with any Released Claim, any Asbestos Personal Injury Claim or any Demand;
>
> ii. enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or against the property of any Released Party with respect to such Claim, demand, cause of action, or interest based upon, relating to, arising out of, or in any way connected with any Released Claim, any Asbestos Personal Injury Claim or any Demand;
>
> iii. creating, perfecting or enforcing any Lien of any kind against any Released Party or the property of any Released Party with respect to any such Claim, demand, cause of action, or interest based upon, relating to, arising out of, or in any way connected with any Released Claim, any Asbestos Personal Injury Claim or any Demand; and
>
> iv. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, the Asbestos Trust or the Asbestos Trust Documents, relating to such Claim, demand, cause of action, or interest based upon, relating to, arising out of,

> or in any way connected with any Released Claim, any Asbestos Personal Injury Claim or any Demand.

The Confirmation Order Glossary defines some of the relevant terms of the channeling injunction. "Released Claims" are "any and all claims against the Released Parties, including without limitation, the Asbestos Personal Injury Claims . . . ," and "Asbestos Personal Injury Claim" is defined as follows:

> "Asbestos Personal Injury Claim" means (a) any claim, or remedy, liability or demand whenever and wherever arising or asserted against the Debtor, its predecessors, successors, subsidiaries or Affiliates, or its present or former officers, directors or employees and (b) any debt, obligation or liability, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, bonded, secured, or unsecured, whenever and wherever arising or asserted, of the Debtor, its predecessors, successors, subsidiaries or Affiliates, or its present or former officers, directors, or employees, including, but not limited to, all thereof in the nature of or sounding in tort, contract, warranty, or any other theory of law, equity or admiralty, whether or not the facts of or legal basis therefore are known or unknown, under any theory of law; in either case (a) or (b) for, relating to, or arising by reason of, directly or indirectly, death, physical, emotional, bodily or other personal injury or damages (including, but not limited to, any claim or demand for compensatory damages, loss of consortium, proximate, consequential, general, special or punitive damages, reimbursement, indemnity, warranty, contribution, or subrogation) whether or not diagnosable or manifested before the Effective Date of the Plan, (x) caused or allegedly caused, in whole or in part, directly or indirectly by asbestos or asbestos-containing products manufactured, sold, supplied, produced, distributed, released, advertised, or marketed by ARTRA or any of the Released ARTRA Parties, including, but not limited to, The Synkoloid Company, or (y) caused or allegedly caused by asbestos for which ARTRA or any of the Released ARTRA Parties is otherwise liable under any applicable law, whether or not arising or allegedly arising, directly or indirectly, from acts or omissions of the Debtor, its predecessors, subsidiaries of Affiliates, or its present or former officers, directors or employees, or any other Entity for or with which the Debtor or its successors are or may be liable, including, but not limited to, any claim, remedy, liability or demand for compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, and any claim, remedy, liability or demand for reimbursement, subrogation and contribution and any claim under any settlement entered into by or on behalf of ARTRA prior to the Petition Date relating to an Asbestos Personal Injury Claim.

"Released Parties" include "Released Non-Debtor Parties," which, in turn, include the "Granite State Released Parties."

The "Granite State Released Parties" are defined as "those parties released under the Granite State Asbestos Coverage Settlement . . . but only to the extent provided for thereunder subject to the terms of the Granite State Asbestos Coverage Settlement. Granite State Released Parties are Released Party as that term is defined within paragraph 1.110 of this Glossary." The "Granite State Parties" include AIG, which is Granite State's ultimate parent company. The Granite State Asbestos Coverage Settlement, which was incorporated into the Plan, was an agreement between Granite State and ARTRA providing, in relevant part, that "the ARTRA entities fully and completely release and forever discharge Granite State from any and all past, present and future Claims . . . that the ARTRA Entities ever had, may now have, or hereafter can, shall, or may have against Granite State based upon, arising directly, or indirectly, out of events concerning or related to the claims and Policies." The Bankruptcy Court approved the Granite State Asbestos Coverage Settlement on April 20, 2006 through an "Order Authorizing and Approving Settlement Agreement and Complete Policy Release between ARTRA Group, Incorporated and Granite State Insurance Company."

### III.　Procedural History

On April 6, 2007, AIG filed the instant action in the District Court, seeking to enforce the channeling injunction and to enjoin Pace permanently from pursuing the Texas Action. On June 14, 2007, this Court referred the matter to the Bankruptcy Court, where both parties moved for summary judgment. On November 27, 2007, the Bankruptcy Court granted summary judgment in favor of AIG, denied summary judgment for Pace, and issued a Final Judgment of Injunction enforcing the channeling injunction associated with the ARTRA Bankruptcy Confirmation Order. The court held specifically that AIG was a "Released Party" within the meaning of the Injunction, and Pace's claim against AIG was "based upon," "related to" and "connected with" a

"Released Claim" which is defined by the Injunction to include his Asbestos Personal Injury Claim against ARTRA and Synkoloid. Accordingly, the channeling injunction prevented Pace from continuing to pursue his claim against AIG in the Texas Action. Pace timely appealed the Bankruptcy Court's decision to this Court.

## STANDARD OF REVIEW

On appeal to the United States District Court, a bankruptcy court's determinations of law are reviewed *de novo*, and its findings of fact are reviewed for clear error. *In re Smith*, 582 F.3d 767 (7th Cir. 2009). Because the facts in this case are undisputed, the Bankruptcy Court's conclusions of law are reviewed *de novo*.

## ANALYSIS

In support of his appeal, Pace presents two primary arguments: (1) the Bankruptcy Court exceeded its jurisdiction by enjoining him from pursuing his contract claim against AIG, and (2) the language of the injunction enforced by the Bankruptcy Court is not broad enough to cover Pace's contract claim against AIG. The Court will address each argument in turn, noting at the outset that it is only after much deliberation that the Court resolves these challenging issues in favor of AIG.

Pace begins by arguing that the Bankruptcy Court lacked jurisdiction to enforce the injunction in this case. Relying on the principle that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor," *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995), Pace explains that the Bankruptcy Court's exercise of jurisdiction here was improper because Pace's claim against AIG derives from AIG's independent, contractual obligation to Pace and therefore concerns the property of AIG, but not ARTRA, the debtor. Pace's argument stems from his understanding of the 2002 Pace Settlement Agreement, under

which ARTRA, AIG, and Kemper (another of ARTRA's insurers) each agreed to pay a set share of Pace's judgment against ARTRA. From Pace's point of view, this agreement memorialized the parties' separate, distinct obligations to him and extinguished AIG's (and Kemper's) role as ARTRA's insurers with respect to him. Given this agreement, Pace concludes, his contract claim against AIG was independent of—and would have no effect on—ARTRA's bankruptcy, and therefore, an injunction under the ARTRA reorganization plan could not properly prevent him from pursuing his claim against AIG.

The problem with Pace's position is two-fold. First, Pace does not account for the special purpose of channeling injunctions under 11 U.S.C. § 524(g), which essentially resolves his jurisdictional challenge. (Indeed, as AIG points out, none of the cases Pace cites to support his jurisdictional argument involve channeling injunctions under § 524(g)). Second, and as a related matter, the language of the ARTRA Bankruptcy channeling injunction is sufficiently broad to sweep in Pace's contract claim against AIG, and therefore the Bankruptcy Court's enforcement of this injunction against Pace's claim was proper. Before reaching this issue, however, some background on § 524(g) may be useful.

The genesis of § 524(g), which aims specifically to facilitate the reorganization of companies overwhelmed by asbestos-related debts, can be traced to the Johns-Manville Corporation ("Manville") bankruptcy in the mid-1980s. *See* Susan P. Johnston, *Extension of Section 524(g) of the Bankruptcy Code to Nondebtor Parents, Affiliates, and Transaction Parties*, 59 Bus. Law. 503, 510-11 (2004) (discussing the history of § 524(g)). Manville, once the country's largest supplier of raw asbestos and manufacturer of asbestos-containing products, filed for bankruptcy in 1982 due the prospect of overwhelming liability. *See Travelers Indem. Co. v. Bailey*, 129 S.Ct. 2195, 2198-99 (2009). The Manville bankruptcy presented the

Bankruptcy Court with the unique challenge of developing a plan of reorganization that would enable payments to reach both "holders of present or known asbestos health related claims . . . and those persons who had not yet manifested an injury . . . using only the broken shards of a Fortune 500 company that had been crushed by the weight of a century-long entanglement with asbestos." *In re Johns-Manville Corp.*, No. 82 B 11656, 2004 WL 1876946, at *14 (Bankr. S.D.N.Y. Aug. 17, 2004) (citation omitted). In response to this challenge, the Bankruptcy Court created the Manville Personal Injury Settlement Trust to pay for all asbestos-related claims. *See Travelers Indem. Co.*, 129 S.Ct. at 2199. Manville's insurers contributed their policy proceeds to provide the initial corpus of the trust, in exchange for insulation from future liability through an injunction channeling all asbestos-related claims exclusively to the trust. *See id.* at 2199; *see also* Kyung S. Lee et al., *Revisiting the Propriety of Third-Party Releases of Nondebtors*, 18 J. Bankr. L. & Prac. 4 Art. 6 (2009) (explaining the Manville bankruptcy proceedings).

In 1994, Congress codified the approach used during the Manville bankruptcy under § 524(g) of the Bankruptcy Code, specifically providing for the type of channeling injunction enforced by the Bankruptcy Court in this case. *See* 5 Collier on Bankruptcy ¶ 524.07. Applying uniquely to bankruptcies involving asbestos claims, § 524(g) provides for the creation of a trust to pay for all asbestos-related claims. *See* 11 U.S.C. § 524(g). Insurers who contribute to such a trust are, in turn, protected from future asbestos-related liability through a channeling injunction that directs all asbestos-related claims to the trust. *See* § 524(g)(4)(A)(ii)(III) (a channeling injunction "may bar any action directed against a third party . . . to the extent such alleged liability of such third party arises by reason of . . . the third party' s provision of insurance to the debtor or a related party."). [1] Sharing the spirit of the Manville bankruptcy plan, channeling

---

[1] In his dissent in *Travelers Indem. Co.*, Justice Stevens explains the reasoning behind this provision of § 524(g):

injunctions under § 524(g) are "designed to immunize the reorganized debtor from litigation so that it can generate the funds necessary to satisfy its tort obligations, and provide an incentive for related non-debtors to contribute assets to the litigation trust for the payment of tort claims." Joshua M. Silverstein, *Overlooking Tort Claimants' Best Interests: Non-Debtor Releases in Asbestos Bankruptcies*, 78 UMKC L. Rev. 1, 57 (2009) (discussing the purpose and structure of § 524(g)). As reflected by both its language and purpose, § 524(g) contemplates wide-reaching channeling injunctions that protect non-debtor insurers (like AIG), who contribute to a debtor's asbestos personal injury trust, from asbestos-related claims by third parties (like Pace). Moreover, as explained below, the language of the particular channeling injunction in the ARTRA reorganization plan is sufficiently broad to cover Pace's contract claim against AIG. The Court therefore finds that the Bankruptcy Court did not exceed its jurisdiction by enjoining Pace from pursuing his contract claim against AIG in Texas state court.

Pace's jurisdictional challenge relates closely to his argument that the language of the ARTRA channeling injunction is not broad enough to cover his state law contract claim against AIG. As one of the primary bases for his appeal, Pace argues specifically that the Bankruptcy Court concluded improperly that AIG was a "Released Party" and that his claim against AIG was "based upon," "related to" and "connected with" a "Released Claim" under the terms of the injunction. The Court's rejection of this argument is unavoidably informed by its resolution of Pace's jurisdictional challenge under the purpose and terms of § 524(g). Indeed, after concluding that § 524(g) endowed the Bankruptcy Court with sufficiently expansive jurisdiction

---

> When a bankruptcy proceeding is commenced, the bankruptcy court acquires control of the debtor's assets and the power to discharge its debts. A bankruptcy court has no authority, however, to adjudicate, settle, or enjoin claims against nondebtors that do not affect the debtor's estate. Because [the nondebtor's] insurance policies were a significant asset of the [debtor's] bankruptcy estate, the Bankruptcy Court had the power to channel claims to the insurance proceeds to the [trust].

129 S.Ct. at 2210 (Stevens, J., dissenting).

to enjoin Pace's independent contract claim against AIG, most of this Court's work was done; it follows naturally that the sweeping language of the particular channeling injunction in the ARTRA reorganization plan encompasses Pace's claim against AIG.

With that said, the Court turns to the specific analysis of the channeling injunction's language and concludes that, under the terms of the injunction: (1) AIG was a "Released Party," and (2) Pace's claim against AIG was "based upon," "related to" and "connected with" a "Released Claim." First, as AIG argues, AIG is a "Released Party" within the meaning of the channeling injunction. "Released parties" include "those parties released under the Granite State Asbestos Coverage Settlement," which include Granite State's parent company, AIG. The Granite State Settlement, which was incorporated into the ARTRA reorganization plan, released Granite State (and AIG) from any claims "arising directly, or indirectly, out of events concerning or related to the claims and Policies." Since Pace's claim against AIG arises out of, and is related to, his prior asbestos personal injury claim against ARTRA, AIG is, necessarily, a "Released Party" under the terms of the ARTRA channeling injunction.

Additionally, the Court agrees with the Bankruptcy Court's conclusion that Pace's claim against AIG is "based upon," "related to" and "connected with" a "Released Claim" under the terms of the injunction. "Released Claims" include "Asbestos Personal Injury Claims," and the channeling injunction defines "Asbestos Personal Injury Claim" quite broadly to include claims "sounding in . . . contract . . . relating to, or arising by reason of, directly or indirectly" an asbestos personal injury claim. Pace argues that his contract claim against AIG relates to an asbestos personal injury claim, if at all, only in a historical sense; although Pace's claim arose out of his asbestos personal injury judgment against ARTRA, the 2002 settlement agreement involving Pace, ARTRA, AIG, and Kemper severed this relationship by providing for the

parties' separate, independent, contractual obligations to Pace for a share of the judgment against ARTRA. The sheer breath of the channeling injunction's language requires the Court to conclude that the injunction covers Pace's claim against AIG. Pace's claim under the 2002 Pace Settlement Agreement undeniably sounds in contract and relates to, or arises (directly or indirectly) from his asbestos personal injury claim. In *Travelers Indem. Co.*, the Supreme Court recently gave broad meaning to similar language concerning claims against an insurance company "based upon, arising out of or relating to" the company's insurance coverage of Manville, the debtor at issue. *Travelers Indem. Co.*, 129 S.Ct. at 2203 (finding that claims and allegations regarding the insurer's failure to warn the public about the dangers of asbestos were "based upon, arising out of or relating to" the company's insurance coverage of Manville). Explaining its liberal reading of this language, the Court stated that "[i]n a statute, the phrase 'in relation to' is expansive." *Id.* (citation omitted). The same is true here.

If the 2002 Pace Settlement Agreement had been simply a compromise of the judgment amount in the original Texas lawsuit, as between Pace and Synkoloid/ARTRA, this case would have been simple. If ARTRA failed to pay and then filed a bankruptcy case, Pace could file a claim for the full amount of the compromise. In the bankruptcy, if ARTRA/Granite State entered into the same (Granite State) settlement agreement and received the same channeling injunction, Pace would not be heard to complain because he would receive a pro rata share of the policy limits that the insurers contributed pursuant to the Granite State settlement and which would be distributed under the plan.

What is different between that hypothetical and the actual case (and what makes this case more complicated) is the fact that the Pace Settlement Agreement is a compromise of the judgment between Pace, Synkoloid, AIG and Kemper, even though the judgment is only as to

Synkoloid. Pace reads that agreement as limiting his claim versus ARTRA to only the portion of the compromised amount that is attributed to ARTRA. Thus, he concludes that when the Bankruptcy Court approved the Granite State settlement, approved the plan of reorganization, and issued the channeling injunction, it did not release AIG from its obligation to pay under the Pace Settlement Agreement because that obligation was contractual and ran between Pace and AIG, not ARTRA. Further, he says that if the Granite State settlement and channeling injunction did, in fact, release AIG, then it is illegal and unconstitutional because he (and the bankruptcy estate) received nothing in exchange for that release, as his claim in bankruptcy was limited to what AIG promised (and failed) to pay. Pace is simply wrong on both counts.

Pace seems to argue that under the Pace Settlement Agreement, he was barred from asserting the full amount of his compromised claim (the compromise amount less what Kemper paid) in ATRA's bankruptcy case. As Pace reads the settlement agreement, he could only claim $197,707.50 in ARTRA's bankruptcy, but not the additional $432,970.00 that he is still owed by AIG under the agreement. If that is correct, then the payment of policy limits under the Granite State settlement helps him only to the extent of his $197,707.50 claim as to ARTRA, but not to the extent of his $432,970.00 claim as to AIG. Of course, that assumes that his interpretation of the Pace Settlement Agreement is correct and that his claim in the ARTRA bankruptcy was, in fact, limited to the amount that ARTRA was to pay under the Pace Settlement Agreement.

This Court reads the Pace Settlement Agreement differently. Although that agreement is not a model of clarity, this Court believes that it did not change the underlying relationship between the parties: Synkoloid owed $2,025,000.00 to Pace. Pace entered into an agreement with Synkoloid/ARTRA and its insurers (AIG and Kemper) compromising that amount to $725,000. The Pace Settlement Agreement further represents an agreement between

Synkoloid/ARTRA and its insurers, that as between themselves, they will pay the amounts set forth in the agreement. The agreement provides that if ARTRA failed to pay the prescribed amount, Pace could not look to the insurers to collect that which ATRA promised, but failed to pay. That the parties felt it necessary to include this provision belies Pace's argument that they intended for the insurers' obligations under the agreement to be separate and independent. If the same settlement contemplated "independent" obligations, this provision would be surplusage. Tellingly, there is nothing in the Pace Settlement Agreement that would bar Pace from seeking recovery from ARTRA for any amounts that the insurers failed to pay. Thus, Pace could have filed a claim in the ARTRA bankruptcy for the sum of the unpaid portions set forth in the Pace Settlement Agreement, including the amount that AIG failed to pay. Had he done so, he would have realized the same benefit from the Granite State settlement as other asbestos claimants.

## CONCLUSION

For the reasons stated above, the Bankruptcy Court's decision enjoining Pace's state law action is AFFIRMED.

Enter:
/s/ David H. Coar

_____

David H. Coar
United States District Judge

**Dated:** March 30, 2010